GARDINER, Judge.
This suit was brought by New Amsterdam Casualty Company, subrogated insurer of Lionel Durr, owner and lessor of the premises 5404 St. Roch Avenue, against Mr. and Mrs. William Redondo, Labiche’s, Inc., and General Electric Company. Plaintiff seeks to recover the amounts paid under its policy of insurance as a result of a fire which damaged the premises occupied by Mr. and Mrs. William Redondo. The lessee owned a residential-type gas clothes dryer which had been manufactured by General Electric Company and sold and installed by Labiche. The fire in question was allegedly caused by a defect in the manufacture, installation or use of the dryer.
All defendants answered denying any liability. Labiche incorporated in its answer a third-party demand against Mr. and Mrs. William Redondo and General Electric Company.
After trial on the merits the lower court rendered judgment in favor of all defendants and against the plaintiff dismissing its suit. No written reasons were given by the trial court. Plaintiff has appealed.
Mr. and Mrs. Redondo purchased in March, 1966, the residential-type gas clothes dryer manufactured by General Electric Company from Labiche. It was delivered to the Redondo home, ■ 5404 St. Roch Avenue, by an employee of the La-biche Company. The room in which the dryer was installed has been variously described by the witnesses as a bedroom, a closed-in garage, a den or a utility room.
Following the installation of the dryer, Labiche had no further connection as the responsibility for the servicing of the unit rested with the manufacturer, General Electric Company.
On December 20, 1966, a fire occurred in the Redondo residence. The principal damage occurred to that area of the room where the dryer was situated.
*232 Plaintiff contends that one 05 all of the defendants are liable. The Redondos are charged with permitting an accumulation of lint in and around the dryer, thus creating a fire hazard. Labiche was charged with negligence in the installation of and failure to vent the dryer and also for having failed to properly instruct the purchasers with respect to the care and operation of the dryer. General Electric Company is charged with having improperly or negligently designed or manufactured the unit, providing inadequate safety devices; failing to properly inspect the unit and failing to provide adequate warning and necessary information concerning the uses and dangers of the unit.
The plaintiff pleads the doctrine of res ipsa loquitur against all defendants.
We shall discuss the issue of liability of the three defendants separately since a different fault or negligence is charged to each one. We will consider first the alleged negligence of Mr. and Mrs. Redondo.
The liability of a lessee for damages to lessor’s property is governed by LSA-C.C. arts. 2721 and 2723, which are as follows:
“The lessee is only liable for the injuries and losses sustained through his own fault.”
LSA-C.C. art. 2721.
“He can only be liable for the destruction occasioned by fire, when it is proved that the same has happened either by his own fault or neglect, or by that of his family.” (Emphasis added.)
LSA-C.C. art. 2723.
It is significant that this article imposes liability on the lessee for loss occasioned by “fire,” only when it results from his fault or neglect or by that of a member of his family. The plaintiff carries the burden of proof of this fault or neglect. It cannot shift the burden to the lessee by invocation of the doctrine of res ipsa loquitur, which the plaintiff has pleaded in this case against all defendants. This was squarely held by us in American Casualty Company v. Lennox, La.App., 169 So.2d 707 (1964).
The plaintiff has attempted to establish fault or negligence on the part of the lessee in permitting an excessive amount of lint to accumulate in and around the dryer, and attempt to show this to be a proximate cause of the fire.
The testimony of Vernon C. Le-Blanc, inspector for the Fire Prevention Bureau, and Francis G. O’Donnell, General Electric’s supervisor of sales and training, does indicate strongly that the fire originated outside the dryer. This fact is borne out by the circumstance of the clothes inside the dryer not having been burned. In an attempt to explain the cause these witnesses theorized that the “very heavy accumulation of lint” described by Mr. LeBlanc probably had become ignited from the gas burner. Both these witnesses expressed the opinion that the fire “could” have started from this cause. Mr. O’Donnell said: “It would be possible that the lint could have acted like a quick [wick?] from under the machine if there had been a serious enough accumulation of lint.”
A very similar situation was before us in Schulingkamp v. Bolton Ford, Inc., La. App., 163 So.2d 161. There we said:
“Nowhere in the record is there evidence that the various alleged acts of negligence caused the fire in question. One expert witness expressed the opinion that spontaneous combustion could result from an accumulation of flammable materials which became overheated. * * * A mere possibility that defendant’s conduct caused the fire is not enough. The Courts may not render judgments on the basis of mere speculation, idle supposition, probabilities, possibilities, or conjecture.” 163 So.2d at 162-163.
The testimony does not convince us that the Redondos were guilty of actionable fault or negligence in permitting lint to accumulate. The uncontradicted testimony *233 of Mr. and Mrs. Redondo is that they followed the instruction for operation and cleaning carefully and that Mrs. Redondo cleaned the room every day and the dryer every time it was used. She did admit that she did not clean lint “from back of the machine.” Her cleaning methods employed the use of common noninflammable domestic cleaning preparations. They had had some trouble with the pilot light which was reported to Labiche which sent out a service man to make a repair or adjustment.
There is no disagreement among the witnesses that the accumulation of lint is to be expected in the use of clothes dryers and there is no evidence to support the contention that Mr. or Mrs. Redondo were guilty of a fault or neglect within the contemplation of LSA-C.C. art. 2723 in this respect. Furthermore, it is highly speculative at best that the accumulation of lint was a probable cause of the fire.
We therefore conclude that plaintiff has failed to discharge its burden of proof by a preponderance of evidence the fault or neglect of the Redondo defendants.
There is no evidence to support the alleged negligence of Labiche in the installation and venting of the dryer. We need only to look to the testimony of Mr. Le-Blanc and Mr. O’Donnell. They both said the dryer was installed in accordance with the requirements for dryers of that type and that venting was not a requirement. Mr. LeBlanc was asked if vent tubing to the outside was required by law. He answered :
“A. No, ma’am, not on residential dryers.
“Q. And what percentage would you say of dryers installed in residences do not use this venting ?
“A. Well, the dryer itself is so built that an individual can go to an appliance store with his own truck and pick up a dryer, bring it home and have a plumber connect a pipe if it’s for gas, and then plug it into a receptacle and that’s all the installation it needs. It’s not required to be vented. I would say in the City of New Orleans there are thousands of dryers installed the way this dryer was installed.
“Q. Did you inspect the installation of the dryer, the gas hookup and so forth ?
“A. No.
“Q. In looking at the thing, did you see any incorrect installation whatsoever?
“A. None to my knowledge.
“Q. Had you inspected this dryer independent of the accumulation of lint, would it be in conformity with New Orleans standard — state and fire standards?
“A. It appeared it’s the standard installation that’s accepted.”
On redirect examination Mr. LeBlanc said:
“Q. Inspector LeBlanc, aside from the statutes or any statutory rules on this, do you consider venting a machine, or not venting a dryer as a good safety practice ?
“A. We would like to see them all vented as far as our work is concerned, because they’re removing that excess heat.
“Q. In your investigation of fires, do you find that to be a common cause of fires?
“A. In non-venting ?
“Q. Yes.
“A. Let me answer this question this way. Any time we find an accumulation of lint or dust or poor housekeeping in the vicinity of an unvented dryer, we’re going to have problems.”
Mr. O’Donnell testified:
“Q. Now, this machine was not vented to the outside?
*234 “A. No. It wasn’t. Actually, the local requirement is if an appliance is 20,000 B.T.U.’s per house or more, it requires external venting. This one was less than 20,000 B.T.U.’s per house, and it required no external venting. This is what the handbook calls for.
“Q. Is it fairly common that a non-vented dryer catch lint on fire in this particular manner?
“A. Lint is highly susceptible to fire, and I would say if there was fire involving a dryer, I think in a higher percentage of cases, lint is involved. And certainly if there is no vent the lint has to accumulate to the rear of the unit.”
From the foregoing testimony it appears that the venting of dryers of the type in question is highly desirable, but in the absence of safety regulations requiring venting the nonvented installation is not negligent. It also appears that the accumulation of lint, a condition common to such appliances, does increase the hazard of fire, but this circumstance alone is insufficient to cast liability upon the Redondos who followed instructions and exercised reasonable care in keeping the dryer and the room clean. If the experts in design and manufacture and in the field of fire-prevention and safety did not consider this known hazard of lint accumulation serious enough to require venting or special precaution, it is unreasonable to impose a higher duty of foreseeability upon the domestic user of such devices.
The plaintiff has offered no proof of its allegations of negligence on the part of General Electric. In the first place there is no proof that the fire was caused by a defect in the dryer calling upon the manufacturer to exculpate itself from a presumption of fault under the doctrine of res ipsa loquitur. See Pilie v. National Food Stores of Louisiana, Inc., 245 La. 276, 158 So.2d 162. Furthermore, the plaintiff cannot invoke this doctrine against this defendant for the additional reason that the dryer had been out of its possession and control for some time and had been exposed to tampering by intervening parties. At least on one occasion the buyer had had trouble with the pilot light and it had been repaired or adjusted by a service man. Under such circumstances the doctrine of res ipsa loquitur cannot be invoked against this defendant. Eversmeyer v. Chrysler Corporation, La. App., 192 So.2d 845.
We therefore concur in the judgment of the trial court that the plaintiff has failed to discharge the burden of proof to entitle it to recovery from either defendant.
The judgment rejecting plaintiff’s demands and dismissing its suit as to all defendants at its cost is affirmed.
Affirmed.