SAMUEL, Judge.
In the early morning hours of Monday, August 28, 1966 a flash fire originated in the basement of a New Orleans apartment building rented and occupied by the families of H. J. Fagot and Raymond Kittizger. Plaintiffs, fire insurers and subrogees of Kittizger and the building owner, filed this suit against H. J. Fagot alleging the fire and the resulting damages they had paid their policy holders were caused by negligence on the part of the defendant. By supplemental petition St. Paul Fire & Marine Insurance Company, Fagot’s liability insurer, was named an additional party defendant. Following trial on the merits judgment was rendered in favor of the defendants, dismissing plaintiffs’ suit. Plaintiffs have appealed.
Pertinent testimony relative to the fire and its cause was given by Mr. Fagot and the following witnesses called by the plaintiffs: William J. McCrossen, a district chief of the New Orleans Fire Department, who arrived at the fire minutes after the alarm was given; Esso Plaisance, a fire inspector with the New Orleans Fire Department, who conducted the investigation; and Mrs. Raymond Kittizger. Mr. Kittizger had died prior to the trial and the only testimony given by Mrs. Kittizger which is material to the issues before us is that Mr. Fagot had kept his outboard motor and tanks in the Kittizger basement with her husband’s permission and her family rarely went into the basement.
Mr. Fagot testified: An ardent fisherman for many years, he had owned a 5j/¿ h. p. outboard motor and detachable 4 gallon gasoline tank. The tank was one of the type customarily used with smaller outboard motors, with a screw cap attached to the tank with a chain and two rubber hoses, one for gasoline and the other for air, which were attached to or plugged in the motor when in use. On the tank was a small pump which when activated caused air pressure to be built up in the tank. The pressure fed fuel to the motor. He also owned an empty 6 gallon tank which had not been used for approximately seven years. The motor and the two tanks were kept in the Kittizger basement. He had been fishing on the Thursday prior to the fire the following Monday morning. In accordance with his usual practice, after fishing he had docked his boat, secured it, pulled the hoses from the motor and run the carburetor dry. Then he had unloaded the boat, put the motor in his car trunk, loosened the cap of the gasoline tank so as to let the pressure out, made sure no pressure remained in the tank and put the cap back on tightly. The tank, which contained about one gallon of gasoline mixed with oil, was placed in his car. Upon arriving at the apartment building he hung the motor on the side of a stationary cement wash tub in the basement, so that the shaft and propeller were on the outside of the tub, and put the 4 gallon tank underneath the motor to the side of the tub on a steel grating covering a wash drain. The tank was in excellent condition, did not leak and was tightly capped when placed in the basement. He then went to his own apartment with his other fishing equipment and did not return to the basement between that time and the fire. He had followed this same procedure on innumerable occasions over a period of years without a mishap. The basement contained a door lead *844 ing to the outside which was never locked, either day or night.
The combined testimony of Mr. Mc-Crossen and Mr. Plaisance, the fire chief and the fire inspector, is to the following effect: Primarily because there was a flash line on the basement wall between the area in which the motor and gasoline tanks were located and the area in which the water heater was located, both concluded the fire was a flash fire caused by vapors from the 4 gallon gasoline tank which were ignited by the pilot burner on the coil-type water heater. The 4 gallon tank was on the basement floor in front of the tub on which the motor hung and its cap was off and hanging by its chain. Its top was undamaged and the cap appeared to have been unscrewed and taken off. It was leaking around one edge but there was no way of determining whether the leak had been present before or only after the fire; it could have been caused by the fire. The tank contained a mixture of gasoline and water, the latter probably being water used by the firemen to extinguish the fire.
The evidence contained in the record also establishes: The Kittizger basement was approximately 20 to 38 feet in length (the testimony varies on this point) with the water heater and the wash tub at opposite ends; and when seen by the firemen immediately after the fire the 4 gallon tank was several feet away from where Mr. Fagot testified he had left it.
The judgment appealed from is based on a finding by the trial judge that Mr. Fagot was not guilty of negligence. In this court appellants make these contentions: (1) Fagot was negligent in placing the 4 gallon gasoline tank in a basement containing a water heater without exercising proper precautions; (2) alternatively, the doctrine of res ipsa loquitur is applicable and plaintiffs are entitled to a judgment under that doctrine; and (3) further in the alternative, defendants failed to call a material witness whom they had subpoenaed and who was present in court, thus raising the presumption that his testimony would be contrary to their interests.
Relative to the first contention, it is clear the trial judge accepted the testimony of Mr. Fagot, a conclusion in which we find no error. We also agree with his finding of no negligence on the part of that defendant. To place and leave the 4 gallon gasoline tank in good condition with its cap tightly in place in a basement some 20 to 38 feet away from the water heater and its pilot burner certainly does not constitute negligence per se.
The doctrine of res ipsa loquitur is a rule of evidence the applicability of which is to be determined at the conclusion of trial; when the doctrine is applicable, the accident which caused plaintiffs’ damages makes out a prima facie case of negligence on the part of the defendant and the burden is then on the defendant to show his freedom from negligence.[1] As the doctrine is an exception to the general rule that negligence is not to be presumed but must be affirmatively proved, it should be sparingly applied and then only in exceptional cases where the demands of justice make its application essential.[2] The doctrine applies only when the instrumentality which caused the damage is in the actual or constructive control of the defendant or where plaintiff has proved freedom of fault on the part of all of those through whose hands the instrumentality passed after leaving the defendant; it has no application where the instrumentality causing the harm has been tampered with after *845 leaving the defendant’s possession and control.[3]
We are satisfied the doctrine is not applicable in the instant case. Accepting the individual defendant’s testimony as did the trial court, he left the 4 gallon gasoline tank with its cap tightly secured. Yet, according to the testimony of plaintiffs’ firemen witnesses, immediately following the fire the cap was unscrewed and hanging by its chain in an area several feet removed from where it had been left by Mr. Fagot. It appears to us that the cap must have been off at the time of the fire because we can conceive of no other way that water used to extinguish the fire could have gotten into the tank. Thus it appears that the 4 gallon tank must have been tampered with while it was in the basement and out of Mr. Fagot’s possession following his Thursday fishing trip and the doctrine of res ipsa loquitur is not applicable for that reason.
Appellants’ third contention, relative to the presumption that the testimony of a defense witness would have been contrary to their interests, is based on the fact that the defendants subpoenaed a # Mr. George Pappas and did not call him as a witness although he was present in court during the trial. Mr. Pappas was an engineer with Shilstone Testing Laboratory, Inc. He did not witness the fire or any of the factual events leading to the fire; he was subpoenaed to testify only as an expert ; and appellants do not suggest in what manner his testimony would have been contrary to the defendants’ interests. Insofar as we are informed and believe, Mr. Pap-pas could have testified only with regard to the origin and cause of the fire as an expert who investigated subsequent to that event. As that origin and cause, i. e., vapor fumes from the 4 gallon gasoline tank being ignited by the water heater pilot burner are conclusions reached and established by plaintiffs’ witnesses, facts which defendants do not contest, and as it appears the testimony of Mr. Pappas could be contrary to the defendants’ interests only to the extent of being in agreement with those conclusions, the presumption could be of no help to the plaintiffs.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Day v. National United States Radiator Corporation, 241 La. 288, 128 So.2d 660; Gerald v. Standard Oil Co. of Louisiana, 204 La. 690, 16 So.2d 233; American Home Insurance Co. v. A. J. Warehouse, La.App., 210 So.2d 544.

. Day v. National United States Radiator Corporation, supra; Lutheran Church of Good Shepherd of Baton Rouge v. Canfield, 233 So.2d 331; 65A C.J.S. Negligence § 220.21 p. 601.

. Lutheran Church of Good Shepherd of Baton Bouge v. Canfield, supra; New Amsterdam Casualty Company v. Redondo, La.App., 225 So.2d 230; Evans v. Travelers Insurance Company, La.App., 212 So.2d 506.