DORÉ, Judge.
This is a suit for workmen’s compensation wherein the plaintiff alleges that he was employed by the Latex Construction Company, from June 4, to August 5, 1949, at Farmerville, in Morehouse Parish, Louisiana, to do certain construction work for a weekly wage of $81.41; that while in the course and scope of his employment, on August 5, 1949, he climbed up on a truck that had an “A” frame on it, which truck was owned by his employer and was being used in connection with the work of his employer; that his feet were wet and muddy and while climbing up on the truck he slipped and fell on his back; “that when his foot slipped out from under him, he fell backward, his back struck the end of a pipe, which pipe was part of the “A” frame which was on the truck. His back also struck the corner of the truck bed, after which he fell to the ground. That when he struck the “A” frame, the corner of the truck bed, and the ground, he suffered severe bruises, scratches, contusions, sprains and strains to his flesh, muscles, ligaments, and spinal column; that he suffered fracture to his spine and that his spinal column was sprained, strained, fractured and pulled out of line.” He further alleges that because of the pain, suffering and discomfort resulting from his aforesaid accidental injuries, he became extremely nervous, and has been unable to rest, work, eat or sleep since the date of the accident. He sues the defendant herein as insurer of Latex Construction Company, his employer, for compensation at the maximum rate of $30.00 per week during the period of his disability but not to exceed 400 weeks, together with legal interest on delinquent instalments less 10 weeks of compensation heretofore paid, plus $250.00 for medical expenses paid by him, and all costs. . .
The defendant, in- its' answer, admitted that the plaintiff was employed by the Latex Construction Company as alleged and that at the time of such employment it was the insurer of said Latex Construction Company. The defendant further admits that it paid compensation at the rate of $30.00 per week to the'plaintiff from August 6, 1949 to October 14; 1949, and • thereafter terminated- compensation upon advice that -there existed 'no réason for physical disability and that the plaintiff was, in the opinion of competent medical authorities, capable of returning to the same work and performing the same duties in which he was engaged at the time of the alleged accident. The defendant therefore denies any further liability to the plaintiff for workmen’s .compensation. With reference to the claim for medical expenses ' the defendant denies any liability to the plaintiff and subject to such denial specially pleads that it has paid to attending physicians the sum of $450.74 and that it should be given credit for such sums expended and paid for medical service rendered To plaintiff.
After trial of the case the trial judge came to the conclusion that the defendant had spent a total of $373.74 for imcdical and hospital attention to the plaintiff and he allowed the difference between that sum and the $500.00 maximum medical allowance, leaving a balance of $126.26 which he concluded was due to the plaintiff for incurred obligations or paid bills for medical services and medicine. He rejected all the other demands of the plaintiff. The plaintiff has appealed.
As set forth in the written reasons of the judgment of the trial judge, the only lay testimony in the case is the testimony of the plaintiff himself, and of his wife and son-in-law. The plaintiff testified that he sustained the accident as set forth in his pleadings and that as a result of the accident he suffered a severe back injury from which he has not improved in any manner; that he suffers constant pain; *102 that he has lost weight; that his appetite is not good and that he spends practically all his time in bed and that he is not able to do manual labor of any kind such as he was doing at the time of his accident. In so far as the actual accident is concerned, there seems to be no question because immediately after the accident, the plaintiff was taken to the Gamier Clinic, at Bastrop, Louisiana, where he was treated from August 5th to August 10, 1949 and shortly thereafter he transferred to the Hardy-Hancock Hospital at Jasper, Texas, where he,was treated by Dr. Joe W. Dickerson. Moreover, the defendant paid workmen’s compensation to the plaintiff from August 5, 1949 to October 14, 1949. The principal question involved, therefore, is whether or not the plaintiff recovered by October 14, 1949, as contended by the defendant.
In so far as his testimony that he has not recovered is concerned, he is amply corroborated by his wife and his son-in-law, and, as stated- above, no other lay witness was called either by the plaintiff or by the defendant.
The medical testimony consists of the depositions of four physicians and surgeons and of one osteopathic physician and surgeon and the testimony of two physicians and surgeons called by the defendant who testified on the trial of the case.
The first doctor who saw the plaintiff was Dr. Amoroso at the Gamier Clinic in Bastrop, La., but this physician was not summoned by either the plaintiff or the defendant. He had been sent to the Gar-nier Clinic 'by his employer.
After leaving .the Gamier Clinic the plaintiff went to the Hardy-Hancock Hospital at Jasper, Texas, where he was treated by Dr. Joe W. Dickerson, aged 35, with 9 years’ experience, who, in his deposition, states that he treated plaintiff in his hospital from August 12th to 20, 1949; that he saw plaintiff at his office on eight different occasions during August, September and October, 1949, and that he had him back in the hospital for the period from October 19, to 25th, 1949, and again for the period from December 10th to 16, 1949’ and that he saw him on December 22, 1949, and apparently thereafter he lost contact with his -patient, although his testimony is to the effect that he was never discharged. He states that his X-ray examination of plaintiff "revealed the presence of a mild sacro-iliac arthritis, and there was also a defect in the articular facet between the second and third lumbar vertebrae. This could possibly have been congenital in origin, that is, he could have been born with it, or it might have been due to a fracture.” and goes on to say that “with the exception of the sacro-iliac arthritis his complaints were -based on a subjective situation.” and “A diagnosis of a physical disability on a subjective basis means that there are no physical findings to bear out the patients complaints.”
■ Dr. G. B. Stephenson, an orthopedic surgeon of Beaumont, Texas, aged 46, with twenty-one years’ experience, examined plaintiff at the request of the defendant on October 17, 1949, and he stated that X-rays of the lumbar spine were taken at his office and that these were entirely negative for any evidence of bone pathology, either recent or old. He- further states that this man had no residual disability resulting from a “leg accident” on August 5, 1949. The sum and substance of his testimony is that he found absolutely nothing wrong with the physical condition of plaintiff, which is not in accord with the other medical testimony.
On February 9, 1950, the plaintiff consulted Dr. Wayne M. Stevenson, an osteopathic physician and sur-geon of Vidor, Texas, aged 29, with approximately six years of actual practice. Dr. Stevenson states in his deposition that x-ray examination of plaintiff showed a transverse fracture of the right inferior articular process of the second lumbar vertebrae, and he expressed the opinion that plaintiff will never be able to perform hard manual labor.
Plaintiff next consulted Dr. James N. Seale, a general physician and surgeon of Jasper, Texas, aged 45, with fourteen years of experience. This doctor states that he examined plaintiff on March 18, 1950, and *103 as a result of his X-ray examination he came to the same conclusion as Drl Stevenson, that the articular process of the second lumbar vertebra on the right side, was completely fractured and also expressed the opinion that plaintiff will never be able to perform hard manual labor.
Dr. Lyman Weeks Crossman, a general surgeon of Baytown, Texas, aged 65, with thirty-eight years of experience, states in his deposition that he examined and treated plaintiff on some eleven occasions from April 29 to September 18, 1950. He further testified that the X-ray examination of plaintiff was made by Dr. Harvey M. Lowry, and, that his interpretation of the X-rays agrees with the report of Dr. Lowry as follows:
“There is no demonstrable fracture either recent or old about the lumbo sacral spine.
“Incidentally, there is an ununited secondary center of ossification at the distal portion of the right inferior pedicle of the second lumbar vertebra, a congenital anomaly.”
It will be noted that Dr. Lowry’s opinion was that plaintiff had an ununited secondary, center of ossification at the distal portion of the right inferior pedicle of the second lumbar vertebra, which he states is a congenital anomaly. Whether congenital or not, Dr. Crossman was of the opinion that the plaintiff would never recover from his condition unless a successful spine fusion operation would be performed on .plaintiff. He .states that plaintiff should be able to perform .manual labor one. year after a successful spine fusion operation, which he states will amount to the expense of $1200.00 for surgical fees and $400.00 for hospital expense. The sum and substance of his testimony is that he found plaintiff .physically disabled to do manual ■ labor. He states that in treating plaintiff he first encased him in a re-inforced plaster of paris jacket to immobilize the injured areas. The last examination made by Dr. Cross-man to plaintiff was on September 18, 1950, from which we quote the following:
“Examination was made after the cast had been removed. He appeared about the same as when previously examined, except that his face appeared more drawn and thin.
“The gait is more feeble and unsteady.
“Motion allowed by the spine—
flexion.:. y3 as compared with the normal range
extension . 14 “ “ “ “ “ “
bending to the right... y3 “ “ “ “ “ “
bending to the left.... y3 “ “ “ “ “ “
Rotation — (twisting body around when feet are held in a fixed position) none,
squatting, unassisted — not possible
patient holding on to table was able to squat one third the normal distance.
pressure on the lower part of the back increases the spasm of the muscles. A plaster cast or a metal brace will not .be enough to properly support the back.” ,.
For some unstated reason the trial judge was not favorably impressed by Dr. Cross-man’s testimony. He states “To state the matter plainly the court is not favorably impressed by Dr. Grossman's testimony.”
It may be noted that the trial judge was not in any better position to pass judgment on Dr. Crossman’s testimony than we are, for the reason that his testimony is given by deposition and not in open court. We cannot agree with the trial judge that this testimony should be brushed aside, for it is difficult for. us to believe that this doctor of vast experience and great qualifications would have treated plaintiff on eleven different occasions from April 29 to Sep *104 tember 18, 1950, unless he was sincerely-convinced that plaintiff had a real injury.
Dr. W. L.' Bendel and Dr.'A. Scott Hamilton, orthopedic surgeons of long experience, of Monroe, Louisiana, examined plaintiff on February 22, 1950, at the request of defendant and for the purpose of testifying at the trial. Their testimony is almost identical. They both found a congenital anomaly at the second lumbar vertebra, the same condition found by Dr. Dickerson and Dr. Lowry.
Dr. Hamilton performed various tests on the plaintiff from which, in effect, he concludes that plaintiff is a malingerer, and in his testimony stated, that these tests generally known to cause pain confined to other parts of the body always resulted in plaintiff complaining of pains in his back. Dr. Hamilton expressed the opinion as follows: “I feel that this patient is suffering from a nervous disturbance which could well account for the condition in which he believes himself to be. Except for the nervous condition I feel that this patient is perfectly able to return to his usual duties, involving hard manual labor without qualifications.”
The trial court obviously agreed with the testimony of Dr. Hamilton and Dr. Bendel to the effect that the plaintiff was a malingerer and also was influenced by the attitude of the plaintiff himself as set forth in his written reasons, quoted as follows:
“Although plaintiff testified that he was confined to his bed more than, twenty hours out of each twenty-four, he sat in court for several hours on the day of the trial and was on the witness stand for a considerable period. However, at the conclusion of the trial it appeared that his eye was not dim, nor his natural force abated. He walked and sat with his body bent forward and his head lowered to the left in fixed positions, but he relaxed these fixed positions more than once in the giving of forceful and sometimes almost vehement testimony. The highly nervous condition of plaintiff was stressed -by himself and his witnesses. This condition could be observed, but it did not manifest itself either in hysteria or melancholia. It appeared instead as a spirit of social rebellion, as was said of Ishmael, ‘his hand will be against every man, and every man’s hand against him.’ Possibly plaintiff sincerely feels there is just cause for such mental attitude on-his part.
“In his history of the accident, as reported to Dr. Seale alone, he stated that when he landed on the ground he thought his back was broken. He apparently still thinks so, in spite of all the expert testimony to the contrary, and he manifests a feeling of resentment toward all the examining physicians who reached a conclusion that did not agree with his. The only treatment given or suggested that seems to have any appeal for him is the spine fusion operation proposed by Dr. Crossman. That he suffered some injury is not disputed. He received compensation for ten weeks, or through October 14, 1949. Whether since that date he has suffered any disability arising out of the accident is difficult to determine. The great preponderance of the evidence is in the negative, and the Court so finds.”
Nevertheless, we cannot agree with the trial judge who based his decision entirely on the opinion of Doctors Hamilton, Ben-del and G. B. Stephenson and disregarded the opinions of Dr. Seale, Dr. Crossman, Dr. Stevenson, the osteopathic, and Dr. Dickerson. We feel that the preponderance of the medical testimony corroborates the lay testimony of the plaintiff, his wife and son-in-law, to the effect that the plaintiff was totally and permanently disabled as a result of the severe fall sustained on August 5, 1949. It must be admitted that the accident sustained was a severe fall, as alleged, and the result thereof is supported by the evidence to the effect that the plaintiff has been totally and permanently disabled since that date.
We agree with the trial judge with reference to the medical expenses allowed but we do not agree with him in his opinion rejecting plaintiff’s claim for total permanent disability. He did have the advantage of observing plaintiff on the witness stand and very probably the plaintiff did exag *105 gerate his condition; but, regardless, we are convinced that the preponderance of the evidence is to the effect that this plaintiff as a result of his accident is totally and permanently disabled under the terms of the Workmen’s Compensation Act, LSA-R.S. 23:1021 et seq., at least as a result o-f the aggravation of a pre-existing physical condition.
For these reasons that portion of the judgment appealed. from which, rejected plaintiff’s demand for compensation is avoided, reversed and set aside, and it is now ordered that there be judgment in favor of plaintiff, E. O. Robbins, and against the defendant, Zurich General Accident & Liability Insurance Co., Ltd.,, granting unto plaintiff compensation at the rate of $30.00 per week, beginning on August 5, 1949, for a period not exceeding 400 weeks, together with legal interest on each delinquent installment, less 10 weeks of compensation heretofore paid, and all costs. It is further ordered that the judgment appealed from be so amended and as amended affirmed.