REGAN, Judge.
This appeal has been perfected in order that we may have an opportunity to evaluate the amount of the award of damages to the plaintiffs, Mr. and Mrs. Eugene Buch-ert, which emanated from a rear end collision wherein Mrs. Buchert was injured as a result of the negligence of the defendant, Doris Jurisich. Liability has been stipulated by the defendant and her insurer, so that the only question posed for our consideration is whether the trial court abused its discretion in awarding the plaintiffs the sum of $10,000.00.
*891 Mrs. Buchert, when the accident occurred, was the forty-one year old mother of five children who engaged in sports and games such as bicycle riding, volley ball, and other activities with them. Following the accident, it is undisputed that she could not engage in these activities.
She visited Dr. Kenneth McCloud on the day after the accident with complaints of pain in her arms, shoulders, neck and chest. While these particular pains subsided within a relatively short period of time, she began to experience low back pains the day after seeing Dr. McCloud. Several days later she visited Dr. John Dyer,[1] her regular physician, who was unable to relieve her condition after two or three visits, and referred her to Dr. G. R. Cary, a specialist in orthopedics.
She first saw Dr. Cary on May 4, 1967, and continued to see him intermittently to the date of the trial, which occurred more than two years later. Her chief complaint to Dr. Cary was the pain in her lower back, which severely restricted her activities. He recommended a corset, which the plaintiff did not wear until she began to experience pain in her legs. At this time, she also commenced wearing support hose.
In September of 1967, Mrs. Buchert began work on a part time basis for approximately two and one-half hours per day teaching and supervising five year old children at a nursery school. She related that her activities involved no lifting or bending and that she was fully capable of performing her duties at the nursery without causing discomfort to her back. However, when the trial occurred, she was unable to stand or do heavy household chores which she had been capable of doing before the accident. Moreover, to reiterate, she was no longer able to engage in sports or other activities with her children.
Mrs. Buchert asserted that the only prior trouble which she had ever experienced with her back resulted from a strain caused by lifting her minor son, but that this discomfort disappeared within several days. This incident occurred approximately five years prior to this accident, and she had never suffered with her back in the interim. She also explained that while Dr. Cary prescribed several types of muscle relaxing drugs, none were successful because they all had the effect of making her ill.
The only other evidence inscribed in the record relevant to the severity of the plaintiff’s injuries was the testimony of Dr. G. R. Cary, who attended her for approximately two years. He testified at great length, and, in the final analysis, more briefly summarized what he had previously asserted. He stated that when the accident occurred the plaintiff was afflicted with an arthritic condition in the two lower vertebral segments of the lumbar spine and that this condition was aggravated and prolonged by the trauma caused by the automobile collision. He explained that prior to the initial visit, the plaintiff evidenced muscle spasm and there were positive findings on the straight leg raising test. The doctor then concluded by pointing out that the plaintiff’s progressive worsening of her arthritic condition was permanent and would not improve.
However, he did qualify the foregoing conclusion by stating that after the first three months of treatment he could not find any objective reasons for the degeneration of the plaintiff’s arthritic condition. He explained that while there were no objective signs to indicate the origin or nature of the discomfort being experienced by the plaintiff, the fact that her complaints did not exist immediately prior to the accident and the fact that they existed continuously since then convinced him that her symptoms were traumatic in origin.
In essence, after the first three months of treatment, Dr. Cary relied more on the veracity of the plaintiff’s expression of subjective complaints than on his objective *892 orthopedic findings. The doctor, quite candidly, based his conclusions as to the traumatic origin of the plaintiff’s permanent disability to a large extent upon his professional discretion.
Likewise, the district judge exercised a large degree of discretion in evaluating the amount of damages awarded herein. In this state, the trial court possesses a great amount of discretion in the award of general damages,[2] and this should not be disturbed on appellate review in the absence of a clear abuse thereof and after taking into consideration the fact that each personal injury must be evaluated according to its own peculiar facts and circumstances.[3] Tested by this standard, we perceive no abuse of the trial court’s discretion in the award of $9,414.62 for pain, suffering and the degree of permanent disability suffered by the plaintiff, who, to reiterate, was an active forty-one year old woman when the accident occurred.
There is some dispute as to the items of special damages awarded to Mr. Buchert. The two which require a brief discussion are an award of $12.00 for a frog test to determine the plaintiff’s pregnancy and an award of $93.97 for the expense incurred for the purchase of a reclining chair which the plaintiffs state was prescribed by Dr. Cary.
The evidence reveals and the authenticity of the bill therefor was stipulated, that Mrs. Buchert became quite apprehensive because she thought she was pregnant during a period in which X-rays were being taken to determine the cause of her low back condition. Since X-rays of a woman in the first few months of pregnancy are quite dangerous to the unborn fetus, the order of her physician to have the frog test made was quite proper and within the realm of foreseeable damages caused by the accident. Therefore, this item should be allowed.
The issue of the allowance of $93.-97 for the reclining chair presents a more vexatious problem. Mrs. Buchert testified that the chair was prescribed for her by Dr. Cary. Mr. Buchert was quite emphatic in asserting that he purchased the chair only because it was prescribed by the doctor and not because it was a desirable piece of furniture. On the other hand, the question pertaining to the necessity for the acquisition of the chair or its prescription by Dr. Cary was never asked of him by either counsel, despite their opportunity to do so. Thus, the testimony of the plaintiffs and the bill produced in support thereof remain uncontradicted, and we have awarded items of special damages of a similar nature in other cases.[4] We are, therefore, convinced that the plaintiffs are entitled to recover for the cost of this chair, and that the trial court did not err in making an award therefor.
For the foregoing reasons, the judgment of the lower court is affirmed.
The defendants are to pay all costs incurred herein.
Affirmed.

. He was absent from New Orleans when the accident occurred.

. La.C.C. Art. 1934(3).

. Richard v. American Oil Company, 213 So.2d 158 (1968); Lomenick v. Schoeffler, Cadillac, 250 La. 959, 200 So.2d 127 (1967); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).

. See Trahan v. Lewis, 223 So.2d 511 (La.App., 1969).