271 So.2d 267 (1972)
Antoine BUSHNELL, Plaintiff and Appellant,
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Defendant and Appellee.
No. 3994.
Court of Appeal of Louisiana, Third Circuit.
December 13, 1972.
Rehearing Denied January 24, 1973.
*268 Bass & Lawes by Fred C. Selby, Lake Charles, for plaintiff-appellant.
Plauche, Smith & Hebert by Allen Smith, Jr., Lake Charles, for defendant-appellee.
Before FRUGÉ, CULPEPPER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
Plaintiff, Antoine Bushnell, had been working as a farm laborer for Allen Marcantel for some twenty-three years. In January, 1970, he underwent a surgical procedure wherein the lower pole of his left kidney was removed. Approximately three months later he returned to work, with the approval of his physician, in a more or less supervisory capacity and with the understanding that he would do no heavy labor. On June 3, 1970, plaintiff single-handedly lifted a water pump weighing between one and two hundred pounds into a pickup truck, and he alleges that in so doing he injured his back. He was discharged by his employer, Allen Marcantel, two or three days later.
Plaintiff was paid no workmen's compensation benefits of any kind and on August 31, 1970, he filed suit against Marcantel's workmen's compensation insurer, Southern Farm Bureau Casualty Insurance Company, alleging his total and permanent disability as the result of the aforementioned incident and asking for penalties and attorney's fees. The trial judge found that plaintiff did in fact sustain a disabling accident as he alleged, but that his disability was only temporary and did not last beyond January 28, 1971. Accordingly, judgment was rendered in favor of plaintiff for workmen's compensation benefits from June 3, 1970, through January 28, 1971, at the rate of $44.10 per week and for his medical expenses to that date. Because the trial judge opined that plaintiff had failed to prove that defendant was arbitrary or capricious in withholding benefits, he denied the claim for penalties and attorney's fees. Plaintiff appealed that judgment to this court seeking benefits for total permanent disability plus penalties and attorney's fees and seven percent interest on each past due installment until paid. Defendant neither appealed nor answered plaintiff's appeal, but in its brief it concedes that interest should be computed at the rate of seven percent (7%) should we find that there are compensation payments past due and owing. We therefore treat only the first two of plaintiff's demands.
The evidence shows that for more than twenty years plaintiff had performed heavy farm labor for Allen Marcantel in Allen Parish, Louisiana. In that position he earned $35.00 per week and in addition he was given a quantity of gasoline for his vehicle each week and a bonus of $1,500.00 at Christmas of each year. He owned his own home, which was situated on a piece of land, belonging to Marcantel, that the latter had promised to give to plaintiff. He had never before been seriously injured or filed a workmen's compensation claim.
On June 3, 1970, plaintiff had not yet returned to heavy labor, or been released by his physician as being able to do so, but *269 rather was supposed to be performing only light duties. Nevertheless, he had operated a tractor, a task that subjected him to considerable vibrations, and on the day in question he had lowered a heavy water pump from his truck with the assistance of Marlin Marcantel, a nephew of Allen Marcantel, who owned and farmed the lands adjoining those of his uncle. Around 11:00 o'clock that morning plaintiff went to the site of the pump and lifted it onto his truck without assistance. In doing so he strained his lower back.
He felt pain immediately and informed a relative, Robert Bushnell, who was working nearby, of the accident. Robert Bushnell, an employee of Marlin Marcantel, offered to transport plaintiff to a physician but the latter declined, saying that he would ". . . wait a while". Plaintiff testified that soon after that Allen Marcantel drove up to the scene and that he then informed him of the accident. This was denied by Marcantel, but Robert Bushnell testified that although he could not hear what was said, he did see plaintiff and Allen Marcantel conversing at that time. Plaintiff went home, informed his wife of the injury, ate his noontime meal, and returned to his duties, which that afternoon consisted of checking the tractors.
There is a dispute regarding the number of additional days that plaintiff was in Marcantel's employment but they numbered no more than three. Plaintiff stated that he saw Allen Marcantel the following day but was unable to speak to him as he drove away. On the next day he said he again told his employer of his injury and asked for medical attention, but Marcantel told him that he was no longer the man that he used to be and discharged him. Allen Marcantel, on the other hand, testified that plaintiff left work to attend a relative's funeral without permission and that he was discharged for that reason. He denied that plaintiff had ever informed him of any accident or injury.
On June 9, 1970, plaintiff consulted Dr. William D. Streete of Lake Charles, Louisiana, in connection with his back injury, and gave him a history of the accident. The doctor's examination revealed spasm of the lumbar erector spinae muscle groups, as well as positive findings on both straight leg and cross leg examination. He accordingly formed a diagnosis of acute lumbosacral strain and began treating plaintiff with analgesics and muscle relaxants. Dr. Streete saw plaintiff a total of fourteen times, the last being on January 26, 1971. As of that date he opined that plaintiff was still disabled from heavy manual labor and he did not think that plaintiff would return to heavy farm work, although on November 17, 1970, he had told plaintiff that he could return to light duty. There was some question regarding whether this physician found any objective symptoms after the first examination of plaintiff. The doctor said that he had found spasm as late as the time of the last examination but admitted that his notes failed to indicate the presence or absence of such findings. Nevertheless, Dr. Streete was steadfast in his opinion that as of January 26, 1971, plaintiff was disabled from heavy manual labor and that his disability would be of indefinite duration. When asked if he would disagree with Dr. Charles V. Hatchette, an orthopaedic surgeon, should the latter express a contrary opinion, Dr. Streete said that he would.
Doctor Hatchette did in fact express a contrary opinion based on one examination of plaintiff performed on January 28, 1971. That examination, which involved a thorough orthopaedic evaluation of plaintiff's back, was considered to be completely normal by Doctor Hatchette with the only reservation being plaintiff's obesity. This physician found no objective evidence to indicate that plaintiff had ever injured his back, and opined that if he had, he was certainly recovered by the time he examined him. He stated that he was thoroughly familiar with the work performed by farm laborers in that area and he considered plaintiff to be perfectly capable of engaging in that activity. Dr. Hatchette admitted that plaintiff could have had a lumbosacral strain in June of 1970, and could *270 still be suffering pain as a result thereof, but he said that if plaintiff is suffering such pain the prolongation is caused by his sleeping on a soft bed and that if he sleeps on a hard bed the pain will cease. He based this last opinion on plaintiff's history wherein he stated that his greatest discomfort occurred on rising in the morning and that his pain decreased after moving about for a couple of hours.
The issue of whether there was a compensable accident is not before us, as defendant now concedes the correctness of the trial court's finding that such an accident occurred. We are concerned herein only with the duration of plaintiff's disability. The medical evidence, all of which was received in the form of depositions, is, as is seen from the foregoing presentation, in hopeless conflict, with one physician asserting plaintiff's disability and the other denying it. We turn, therefore, to the lay testimony for a resolution of the issue.
The lay testimony regarding plaintiff's continuing disability was provided by, besides plaintiff himself, Colleen Bushnell, plaintiff's wife, Carroll Bushnell, plaintiff's son, and Robert Bushnell, a relative of plaintiff's. All of these witnesses, who were in frequent if not constant contact with plaintiff, were unanimous in testifying that plaintiff has complained of pain in his back and has not been able to work since the accident. Their testimony in this regard was uncontroverted, as defendant rested this portion of its case solely on the expert evidence provided by Dr. Hatchette. Under these circumstances we opine that plaintiff has proved his continuing disability beyond January 28, 1971, and that his payments should not have been ordered to terminate on that date. Robbins v. Zurich General Accident & Liability Ins. Co., La.App., 51 So.2d 100; Rogers v. Union Indemnity Co., La.App., 146 So. 505.
Should plaintiff's disability eventually disappear, defendant has its remedy. As we said in the case of Andrus v. Great American Insurance Company, La.App., 161 So.2d 109:
Under the workmen's compensation law, a claimant is considered totally disabled when, because of the injuries received in the accident, he is no longer able to perform without pain the heavier duties of the occupation in which injured. Reed v. Calcasieu Paper Co., 233 La. 747, 98 So.2d 175; Cloud v. W. H. C. Pipeline Co., La.App. 3 Cir., 155 So.2d 458. Further, where a claimant is totally disabled at the time of the trial, and the evidence is conflicting or uncertain as to when he may recover, compensation should be awarded for the maximum number of weeks prescribed for permanent disability, since the defendant employer is protected by the provision permitting revision of the judgment after six months should the disability terminate or lessen. Soileau v. Tyl, La.App. 3 Cir., 148 So.2d 173; Ware v. Industrial Timber Products, Inc., La.App. 3 Cir., 147 So.2d 672; Harris v. Argonaut Insurance Co., La.App. 2 Cir., 142 So.2d 501.
On the question of plaintiff's request for penalties and attorney's fees, we have already discussed the contradictory statements of plaintiff and Allen Marcantel regarding whether or not the latter was informed of the accident on the date that it happened. We need not decide which is the correct version of that dispute, however, as Allen Marcantel admitted that he received a letter from plaintiff's attorney informing him of plaintiff's claim on June 12, 1970, nine days after the accident. He stated that he gave the letter to defendant's adjuster. On November 16, 1970, plaintiff's attorney wrote to defendant's attorney enclosing copies of plaintiff's answer to the latter's interrogatories, a handwritten note from Dr. Streete stating that plaintiff had an acute lumbosacral strain, and bills from Dr. Streete and a pharmacy. Robert Bushnell testified that some time prior to the trial, a man whom he believed to be an agent of the insurance company went to see him and asked him about plaintiff's accident. He said that he gave the investigator substantially the same information that he gave at the trial. Defendant, then, had adequate *271 notice of plaintiff's claim even prior to the filing of suit, but even if it had not, its total rejection of plaintiff's claims and denial of any liability to him, contained in its answer of September 22, 1970, constitutes a waiver of any further requirement of written notice or delay for the imposition of penalties and attorney fees. LSA-R.S. 22:658; Williams v. Travelers Insurance Company, La.App., 157 So.2d 356; Darby v. Johnson, La.App., 118 So.2d 707.
In its efforts to avoid the imposition of penalties and attorney fees, defendant relies primarily on Allen Marcantel's assertion that he was not informed of plaintiff's accident until after he had fired him. This, according to defendant, casts suspicion on plaintiff's claims. Marcantel's versions of the time when notice was given is disputed by plaintiff who said he informed his employer of the accident on June 3, 1970, the date of its occurrence. The testimony of Robert Bushnell as well as that of Colleen Bushnell would seem to indicate the correctness of plaintiff's version. Be that as it may, prior to January 28, 1971, when Dr. Hatchette entered the picture, the plaintiff's claim of disability was undisputed and was in fact supported by the only medical opinion then available, in the form of Dr. Streete's diagnosis, given to defendant on November 16, 1970. In addition, this court has previously held that mere suspicion does not justify the withholding of workmen's compensation benefits by an insurer. Delafosse v. Industrial Painters, Inc., La.App., 199 So.2d 559; Williams v. Travelers Insurance Company, supra. Since defendant had no basis other than its suspicion for withholding benefits, there was not a shadow of legal justification for its so doing. Accordingly, we consider defendant's failure to pay benefits to have been arbitrary, capricious and without probable cause within the meaning of the penalty statutes, and plaintiff is entitled to penalties of twelve percent (12%) on the award herein made plus reasonable attorney's fees.
In setting the last named damages we note that plaintiff's attorneys participated in the taking of four depositions, besides the trials in the District Court and in the Court of Appeal, with all the labor attendant thereto. We therefore think the record justifies an award of $3,000.00 for attorney's fees. LSA-R.S. 22:658; Thibodeaux v. Associated Distributing Company, Inc., La.App., 260 So.2d 46; Writ refused 262 La. 131, 262 So.2d 395; Delafosse v. Industrial Painters, Inc., supra; and cases therein cited.
For the above and foregoing reasons the judgment of the district court is amended so as to extend the workmen's compensation payments of $44.10 per week commencing on June 3, 1970, beyond the date thereby set for their termination, January 28, 1971, for the duration of plaintiff's disability, not to exceed a period of five hundred (500) weeks, with credit for all sums already paid, together with legal interest on each past due installment from its due date until paid at the rate of seven percent (7%) per annum. It is further amended insofar as it awarded plaintiff medical expenses so as to include any medical expenses that plaintiff might incur in the future as the result of the accident of June 3, 1970, not to exceed the statutory limits set out in LSA-R.S. 23:1203, with interest at the rate of seven percent (7%) per annum, from date of judicial demand until paid on all medical expenses proved. As thus amended those portions of the district court's judgment are affirmed.
The judgment of the district court is reversed insofar as it denied plaintiff's claim for penalties and attorney's fees, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Antoine Bushnell, and against defendant, Southern Farm Bureau Casualty Insurance Company, for penalties at the rate of twelve percent (12%) on the entire amount of the foregoing portion of our judgment, except the interest thereon, and for attorney's fees in the amount of $3,000.00, both penalties and attorney's fees to bear interest at the rate of seven percent (7%) per annum from date of judicial demand, August 31, 1970, until paid.
*272 All costs in this and in the trial court are to be borne by defendant-appellee.
Amended in part, reversed in part, and rendered.
CULPEPPER, J., dissents and assigns written reasons.
CULPEPPER, Judge (dissenting).
This is a workmen's compensation case arising out of an alleged accident on June 3, 1970. At the trial in the district court, the issues were (1) the occurrence of a compensable accident and (2) the duration of disability. The district judge found on the facts that a disabling accident occurred but that the disability was temporary and did not extend beyond January 28, 1971. Accordingly, judgment was rendered for workmen's compensation benefits to that date, but plaintiff's demand for penalties was rejected.
The majority has reversed the trial judge on issues which are entirely factual and depend largely on the credibility of the witnesses. They not only find plaintiff permanently disabled but award penalties and attorney's fees.
I cannot agree. In my view, the judgment appealed should be affirmed.
The record clearly supports the finding of the trial judge that plaintiff's disability was temporary and did not extend beyond January 28, 1971. The facts show that plaintiff is a negro male, 47 years of age, who is 5' 4" tall, weights 200 pounds and is obese. In January of 1970 a portion of one of his kidneys was surgically removed at the Charity Hospital in Pineville, Louisiana. This left a surgical scar about 10" in length extending almost from the spinal column around the flank to the navel and just below the belt line.
About 3 months after this surgery, plaintiff returned to light duty on Mr. Marcantel's farm. There is a conflict in the testimony as to his return to work. Plaintiff says that Mr. Marcantel came and begged him to return to help take care of the tractors and supervise the men. Mr. Marcantel says that plaintiff came to him and begged to be allowed to return to work. In any event, plaintiff did return to work and the record shows that he was supposed to perform only light duties consisting of checking the tractors for fuel and maintenance and seeing that the drivers performed their assigned tasks.
Plaintiff had been performing these light duties for about 2 months when the alleged accident occurred on June 3, 1970. Plaintiff says that he had driven a pickup truck to the rear of a field to get a water pump. He was alone and lifted the pump, which weighed in the neighborhood of 100 pounds. Plaintiff says that it was on this occasion he hurt his back. He drove back to the front of the field and says that he told a fellow employee that he thought he had hurt his back and that night when he went home he told his wife and one of his children that his back hurt. But plaintiff did not stop working. He worked each day until Saturday, June 6, 1970 on which date he was discharged.
There is a dispute as to the reason for plaintiff's discharge. The defendant employer says that without getting permission and without any notice plaintiff went to a funeral and a wake on June 4th and 5th and did not take care of his duties and that was the reason for plaintiff's dismissal. Plaintiff admits he went to the wake Thursday night and to the funeral for about an hour on Friday morning, but says he nevertheless attended to his duties. In any event, plaintiff was discharged on Saturday, June 6, 1970.
Plaintiff did not go see a doctor until June 9, 1970. He consulted Dr. William D. Streete, a physician and surgeon of Lake Charles, complaining of back pain. It was on this same date that plaintiff consulted a lawyer in Lake Charles and a letter of demand was written.
Dr. Streete's testimony was taken in two depositions and is entitled to little weight. *273 He apparently conducted only a superficial examination. He says that on June 9, 1970 he found muscle spasms in the low back and diagnosed a lumbosacral strain. However, it is very strange that Dr. Streete did not notice the large scar left from the kidney surgery and made no notation about this. The area which Dr. Streete says he palpated for the spasm is almost exactly where the scar was located and should have been noticed.
Dr. Streete continued to see and treat plaintiff from June of 1970 until January 26, 1971. His treatment consisted solely of drugs for pain and muscle relaxation. He says plaintiff progressed but that he continued to have pain until the date of his last examination on January 26, 1971. However, under cross-examination Dr. Streete admitted that after the spasm on June 9, 1970, he made no notations of any further muscle spasm being found during any subsequent examinations. Apparently, Dr. Streete just relied on plaintiff's subjective complaints of continued low back pain and did not conduct any further actual examinations of the back. In my view, this weakness in the testimony of Dr. Streete fully justifies the little weight which the district judge apparently gave to his testimony.
On January 28, 1971, plaintiff was seen by Dr. C. V. Hatchette, a Board Certified orthopedic surgeon in Lake Charles. This physician found no evidence of residual orthopedic disability and was of the opinion that plaintiff could return to manual farm labor from an orthopedic standpoint. He gave no opinion as to any post-operative condition but noted no disability for this reason. It was Dr. Hatchette's opinion that this obese individual is susceptible to back trouble and that his complaints are the result of sleeping on a soft mattress. This was based on plaintiff's statement that on arising early in the morning he had these pains in his low back but that during the day, with activity, the pains would disappear. Also, of course, Dr. Hatchette found no muscle spasm, atrophy or any other objective signs of orthopedic trouble.
So we have two expert medical opinions. One by Dr. Streete whose testimony shows that his examinations were very superficial and that after the first one in June of 1970 he actually made no objective examinations whatsoever. And on the other hand, we have Dr. Hatchette, who is a highly qualified surgeon and who made a thorough physical examination.
The lay testimony consists of plaintiff's wife, his son, and his nephew who say that plaintiff was working satisfactorily before the accident and that since that time he has complained of low back pain.
Under this evidence I think the record clearly supports the factual finding of the trial judge that plaintiff's disability was temporary and that it did not last beyond January 28, 1971, which was the date of Dr. Hatchette's examination.
On the issue of penalties, I think the evidence even more clearly supports the trial judge. Plaintiff says he hurt his back at about 11:00 A.M. on June 3, 1970 and that he went home for lunch and then came back to the job and told Mr. Allen Marcantel. Of course no one saw the accident, and the only other witnesses upon whom plaintiff relies are his wife, his nephew and his son, who testified that plaintiff told them that he hurt his back picking up a pump.
On the other hand, Mr. Marcantel denies emphatically that plaintiff ever advised him of an accident and resulting injury. Mr. Marcantel says that he fired plaintiff on Saturday, June 6, after plaintiff failed to appear for work, without an excuse, for the two prior days.
Of course, as stated above, plaintiff kept on working after the alleged accident on June 3, 1970 and didn't go to see a doctor until after he was discharged on June 6. Plaintiff first saw Dr. Streete on June 9, 1970. The circumstances under which plaintiff consulted Dr. Streete are even strange. He says he just went to Lake Charles and happened to see Dr. Streete's sign on his building and went in and consulted him. Plaintiff denied that his attorney *274 referred him to Dr. Streete, but it is rather strange that the notice of demand from the attorney was mailed on the same date, June 9, 1970.
Although the defendant insurer has not contested the occurrence of an accident on appeal, I think that at the trial in the district court there was a sufficient dispute as to the accident to find that the defendant was not arbitrary or capricious in failing to pay compensation. The fact that plaintiff was not supposed to do hard work, that he was alone at the time he allegedly lifted the pump, that the only witnesses who support him are his relatives who testified he told them about the accident, that plaintiff kept on working and did not see a doctor until after he was fired and the strange circumstances surrounding Dr. Streete's examination and the weakness of his deposition, all raise sufficient questions about the accident that I don't think the defendant was arbitrary and capricious.
I respectfully dissent.