284 So.2d 787 (1973)
Cornelius HARRIS, wife of Harry HUSBAND
v.
INSURANCE COMPANY OF NORTH AMERICA.
No. 5864.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1973.
*788 E. Howard McCaleb, III, New Orleans, for plaintiff-appellant.
Robert J. Young, Jr., New Orleans, for defendant-appellee.
Before SAMUEL, STOULIG and SCHOTT, JJ.
SAMUEL, Judge.
This is a suit for total and permanent disability benefits under the Louisiana Workmen's Compensation Act. Plaintiff was injured in an accident which occurred on July 4, 1971 while she was employed as a waitress by the Downtowner Motor Hotel, the defendant's insured. She slipped on some water and fell backwards, landing on her back and striking her head against an ice machine. Immediately after the fall she experienced numbness in her leg.
Plaintiff's employer sent her to Dr. Arthur J. Axelrod, a general surgeon, who was unable to make any back injury findings of an objective nature and who treated her conservatively. She returned to work on September 7, 1971 and continued to work until the following October 7. She was again unable to work from October 7 to December 30, 1971, but returned to work on that day and continued until May 13, 1972. On May 14, she discontinued work and never returned.
After approximately four months of treatment by Dr. Axelrod, plaintiff consulted Dr. David W. Aiken, also a general surgeon, who treated her from October 8, 1971 until December 28, 1971. His findings were essentially the same as those of Dr. Axelrod, particularly in that they were negative for objective symptoms of back injury.
Plaintiff then was seen by Dr. S. H. LaRocca, an orthopedic specialist. On March 28, 1972 Dr. LaRocca's examination was essentially negative and he concluded plaintiff should be allowed to continue work. She again saw Dr. LaRocca on May 11, 1972 and again he found no objective symptoms of any major back injury.
At the request of the defendant, plaintiff was seen by Dr. H. R. Soboloff, also an orthopedic specialist, on December 6, 1971. At that time he found "no residuals of any injury." On September 22, 1972 he again found no objective findings of an orthopedic nature. However, it should be pointed out that Dr. Soboloff neither performed a pin prick test on the great toe which the plaintiff claims was numb at the time nor did he perform a myelogram.
Subsequent to June 13, 1972 and because of her continued complaints, which included pain in the low back and weakness of the left extremity which was "compatible with disc disease in the low back", Dr. LaRocca hospitalized plaintiff and placed her in traction. She responded well to this regimen as well as to chemical therapy, but later her condition degenerated from a subjective viewpoint. On November 8, 1972 Dr. LaRocca performed a myelogram, which revealed what he described as a "grossly" herniated intervertebral disc related to the great toe muscle. The next day he removed the offending disc and performed a fusion of the plaintiff's spine at the L-4, L-5 interspace, which was "taken down to the sacrum to provide a stable brace."
Trial was held on December 6, 1972, shortly after the operation. At that time Dr. LaRocca expressed the opinion that if a completely successful result was obtained from the surgery, plaintiff conceivably could return to her former occupation in about a year. He felt she would have some restriction of movement, but was unable to predict the amount or degree. He was most explicit on the fact that between four and six months are required for the *789 fusion to become stable and approximately a year for it to mature. He further testified he could possibly determine whether the operation was successful after nine months, but in no event would he recommend that the plaintiff resume work before the one year period.
The trial was continued until February 1, 1973, at which time plaintiff testified quite candidly that she had obtained great relief from pain since the operation. However, she stated she was restricted to sitting down for a period of one hour at a time and did have numbness when the weather was bad. At the time of the second portion of the trial plaintiff was still in a back brace. Her testimony regarding the alleviation of her pain was substantiated by Dr. LaRocca's report, which was stipulated into evidence. This report covered the last examination of plaintiff on January 17, 1973 and includes the statement by the doctor that plaintiff was to return in six weeks for x-ray study and examination to determine "whether or not it is safe to discontinue her brace." The record contains testimony establishing the fact that plaintiff's occupation as a waitress involved carrying heavy trays, stooping and bending.
Because plaintiff testified she was substantially relieved of pain the trial court awarded compensation from September 7, 1971 through March 1, 1973, the date on which she was to return to Dr. LaRocca to determine whether or not her back brace could be discarded. Defendant satisfied the judgment as awarded, reserving to the plaintiff the right to appeal.
Plaintiff has appealed contending she should have been awarded total and permanent disability subject to the right of re-examination by the defendant as provided by LSA-R.S. 23:1331.[1]
The injury sustained by the plaintiff was most severe. The treating physician testified, without contradiction, that he could not recommend her returning to work as a waitress for approximately one year after her spinal fusion, and at the time of the second portion of the trial, it had not yet been determined even whether she was able to do without her back brace.
There is no substantial contradiction in the medical testimony. All four doctors who saw the plaintiff, including the operating physician, established that prior to the performance of the myelogram there were no significant objective symptoms to indicate an injury to the plaintiff's back of such a severe nature. However, after the myelogram was performed only Dr. LaRocca examined the plaintiff. His surgery conclusively established the existence of a ruptured intervertebral disc, thereby eliminating both the medical and legal consequences of plaintiff's prior lack of objective symptoms.
When a claimant seeking workmen's compensation is disabled at the time of the trial, and the evidence is inconclusive regarding the degree of his recovery, it has been the practice of our courts to apply LSA-R.S. 23:1331 and award compensation for the maximum number of weeks allowed for permanent disability, reserving to the defendant the right to examine the plaintiff and revise the judgment after six months in the event the disability should terminate or lessen.[2]
Since the record contains uncontradicted medical testimony plaintiff would *790 not be able to return to full employment for one year after her operation, and only then in case of completely successful results from that surgical procedure, we cannot say she was ready to return to work on March 1, 1973, when she was scheduled to return to Dr. LaRocca for the purpose of making a determination as to the feasibility of discarding her back brace. Plaintiff is entitled to be awarded total and permanent disability and, because of the testimony and other evidence taken in February, 1973 which indicates a probable favorable result from the operation, defendant is entitled to the benefit of the procedures contained in LSA-R.S. 23:1331 for a reexamination and diminution of benefits, if warranted.
Plaintiff also argues she is entitled to recover the sum of $158, representing the bill from an ambulance service which she was required to obtain to attend court on the day of trial on December 6, 1972. She had just undergone the removal of the herniated disc and the spinal fusion on November 9, 1972, and Dr. LaRocca would not permit her to sit in the courtroom at a time so close to her surgery since to do so would jeopardize a favorable surgical result.
Plaintiff argues that the case was originally fixed for trial on July 12, 1972, at which time she was present in court and prepared for trial. The case was continued until October 11, 1972, at which time she was again present and prepared for trial, but the case again was continued until December 6, 1972. Hence, the essence of her argument is that if she had been allowed to go to trial prior to her operation she would not have been compelled to incur the expense of $158 for the rental of a stretcher and an ambulance, which apparently had to remain at the courthouse all day for the reason that it was not equipped with two stretchers to enable it to attend other patients.
There is no authority for an award of such a nature under the circumstances. LSA-R.S. 23:1203 provides the employer is obliged to pay the employee's medical expenses and to pay for the repair or replacement of prosthetic devices damaged or destroyed by accident in the course and scope of the employee's duties. In addition, the courts have allowed travel expenses under LSA-R.S. 23:1203, but then only for medical treatment provided the amount of the expenses were adequately and legally proved.[3] The statute in question does not provide for travel expenses to allow an injured party to attend court and we have found no jurisprudence making such an award. The cases cited by the plaintiff in support of her contention[4] are both tort cases in which either a special chair or maid services were awarded to the plaintiff upon proof that their necessity was caused by the defendant's tortious actions. Those cases do not construe the workmen's compensation statute, and they have no application to the matter now before us.
For the foregoing reasons, the judgment of the lower court is amended to award plaintiff, Cornelius Harris, wife of Harry Husband, workmen's compensation benefits in the amount of $49 per week commencing on September 7, 1971 for a period not to exceed 500 weeks, with interest on each past due payment at the legal rate from date due until paid, together with all medical expenses incurred by the plaintiff as a result of her injury, subject to a credit in favor of the defendant, Insurance Company of North America, for all sums paid for workmen's compensation benefits in connection with the accident in suit and subject to a credit in favor of said defendant for the sum of $5,880.48 paid by it for medical costs on behalf of plaintiff; all costs in both courts to be paid by the defendant. *791 All rights are reserved to the defendant to proceed under LSA-R.S. 23:1331. As so amended and in all other respects, the judgment appealed from is affirmed.
Amended and affirmed.
NOTES
[1] Insofar as is here pertinent, LSA-R.S. 23:1331 provides:

"At any time six months after the rendition of a judgment of compensation, a judge of the trial court that rendered the judgment shall review the same upon the application of either party for a modification thereof, on the grounds that the incapacity of the employee has been subsequently diminished or increased,. . ."
[2] See, for example, Bushnell v. Southern Farm Bureau Casualty Ins. Co., La.App., 271 So. 2d 267, and Andrus v. Great American Insurance Company, La.App., 161 So.2d 109.
[3] Pennywell v. Crawford, La.App., 262 So. 2d 830.
[4] Buchert v. Jurisich, La.App., 232 So.2d 890 and Trahan v. Lewis, La.App., 223 So. 2d 511.