285 So.2d 332 (1973)
Rosemary Brouillette REASON, Plaintiff and Appellee,
v.
JOAN OF ARC COMPANY and Liberty Mutual Insurance Company, Defendants and Appellants.
No. 4343.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1973.
Rehearing Denied December 3, 1973.
*333 Bolen & Roberts by James A. Bolen, Jr., Alexandria, for defendants and appellants.
Ben C. Bennett, Jr., Marksville, for plaintiff and appellee.
Before FRUGE, SAVOY, and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This is a workmen's compensation suit instituted by Mrs. Rosemary Reason against her former employer, The Joan of Arc Company, and its insurer, Liberty Mutual Insurance Company. Plaintiff demands compensation benefits based upon total and permanent disability. Defendants admit that plaintiff sustained an injury during the course of her employment with Joan of Arc. They contend, however, that plaintiff has recovered and is not disabled within the meaning of the Workmen's Compensation Act.
Judgment was rendered by the trial court in favor of plaintiff for workmen's compensation benefits from the date of discontinuance at the rate of $42.38 per week, plus all medical expenses, not to exceed five hundred weeks from the date of injury. Plaintiff's claim for penalties and attorney fees was rejected.
Defendants have appealed. Plaintiff has answered defendants' appeal praying that the judgment be modified so as to award penalties and attorney fees.
Two issues are presented: (1) Is Mrs. Reason totally and permanently disabled? and (2) Are penalties and attorney fees assessable?
Plaintiff was a seasonal employee of defendant's canning factory for a period of approximately four years prior to her injury. Her duties at the time of injury included processing and cutting potatoes on a conveyor line. This also entailed the placing of potatoes, which had fallen off the conveyor, into tubs and carrying these filled tubs to the beginning of the conveyor line to be reprocessed.
On or about August 23, 1971, plaintiff, while working, began experiencing sharp pains in her chest, right arm, and right shoulder. As these pains continued for several days, Mrs. Reason expressed complaints to her foreman and was sent to the *334 company physician, Dr. Edmond Kalifey, a general practitioner.
Doctor Kalifey examined plaintiff on August 26, diagnosed a muscle irritation, and administered a cortizone injection. Treatment continued until October 14th, at which time plaintiff was referred to an orthopaedic surgeon. She had continued to express complaints of pains in her upper chest, right arm, and shoulder areas. Although cortizone treatment and other medication was given plaintiff during this two-month period only slight and temporary improvements were noted and plaintiff's condition was not alleviated.
Dr. Ray Beurlot, orthopaedic surgeon of Alexandria, saw Mrs. Reason first on October 18, 1971. Doctor Beurlot found her upper right extremity to be weak and when attempting to use the right arm plaintiff experienced sharp pain. He also found decreased sensation over the median nerve of the right hand and grip tests revealed very little strength in the same hand. Diagnosis of possible median nerve syndrome was made and after no evident change in plaintiff's condition surgery was performed for a carpal tunnel release of her right hand on the following November 4th. This operation necessitated the severing of a wrist ligament so as to relieve compression on the nerves in that area. Hopefully this procedure would relieve plaintiff's pain. Doctor Beurlot saw plaintiff regularly immediately following her operation. In addition he saw her on November 29, December 20, January 20, 1972, January 27, March 7, and April 27. Although plaintiff's discomfort lessened somewhat after the operation, by January 20, 1972, tenderness, tightness and pain in the wrist area had increased. Doctor Beurlot therefore requested a consultation with an orthopaedic hand specialist, Dr. Daniel Riordan. Plaintiff, on March 7th, however, returned to see Doctor Beurlot experiencing pains and numbness in the entire right upper extremity. Sensation to pin prick over the entire area was zero. As he was unable to explain Mrs. Reason's complaints on an orthopaedic basis he recommended that she keep her visit with Doctor Riordan for further evaluation.
Doctor Riordan examined plaintiff on March 9, 1972, but could find no objective reasons for plaintiff's complaints of pain and numbness. He did however admit that he did not know whether this could have been caused by pressure on a nerve, thereby delaying conduction.
Thereafter plaintiff returned to Doctor Beurlot on April 27th with the same subjective complaints. Doctor Beurlot again was unable to explain them on an orthopaedic basis and agreed with Doctor Riordan that it might be of value for plaintiff to see a neurosurgeon.
Plaintiff was thereby directed to see Dr. Thomas Flynn, a neurosurgeon, who saw her on June 23, 1972. Doctor Flynn noted that plaintiff's subjective complaints were unchanged from their post-operative state. She continued to experience discomfort in the right shoulder, arm, and hand; X-rays were taken as well as a conduction time study and electromyography of muscle groups in the right arm to see if any interference in nerve conduction could be found. From the tests Doctor Flynn could establish no cause for the shoulder and arm pains complained of. It was therefore his opinion that Mrs. Reason was able to carry out her usual occupation without limitation.
Thereafter a medical report dated July 10th from Doctor Flynn was forwarded to defendant insurer, Liberty Mutual Insurance Company. Based upon this report, workmen's compensation benefits which had been paid since first report of the accident, were terminated on July 12th.
Although plaintiff was initially discharged by Doctor Kalifey in December, 1971, she continued to be treated by him during the ensuing months in which she saw the aforementioned physicians. She made visits in January, 1972, on March 6, March 28, May 11, and again in July. He *335 was unable, however, to account for her symptoms.
Suit was filed on November 6, 1972, and shortly thereafter plaintiff was referred by her attorney to Dr. Homer Kirgis, an orthopaedic surgeon, who is also head of the department of neurosurgery at Ochsner Clinic in New Orleans as well as professor of neurosurgery at Tulane University. He examined Mrs. Reason on November 21, 1972, almost five months after her visit to Doctor Flynn. Her complaints of pain in the upper right extremity extending down to the hand were the same. Doctor Kirgis found restriction of movement in the upper extremity, limited by neck pains, tenderness in the right shoulder and hand, and a registration of zero on the spring gripometer test to the right hand. He also found decreased sensation, swelling, coldness, and a cyanotic appearance in the right hand. Doctor Kirgis recommended admission to the hospital for further evaluation by myelography and a sympathetic block, and possible surgical treatment. He made no diagnosis at the time, but was of the opinion from his findings that one or two particular nerves had been injured causing sympathetic nerves to react. The coldness, cyanosis, and swelling indicated that there was irritation in some area such as the neck or chest with the production of reflexes causing pains as well as the symptoms. He was also of the opinion that Mrs. Reason was expressing the truth as to her pain, that she was not faking the gripometer test, and that she was unable to return to her normal occupation. He considered plaintiff disabled if her symptoms persisted.
The medical evidence is obviously in conflict. Three physicians found no objective reasons for plaintiff's post-operative complaints of pain. In addition, there are the opinions of two neurosurgeons, Doctor Flynn and Doctor Kirgis, one asserting plaintiff's disability and the other denying it. We can turn, therefore, to the lay testimony to help resolve the issue.
Murphy v. Messenger, 258 La. 31, 245 So.2d 345 (1971); Bushnell v. Southern Farm Bureau Casualty Ins. Co., 271 So.2d 267 (La.App. 3rd Cir. 1972). Laroux v. Hunt Lumber Co., 209 So.2d 768 (La.App. 3rd Cir. 1968).
The lay testimony, other than that of plaintiff, regarding her continuing disability and pain was provided by her husband and two daughters. Their testimony was to the effect that Mrs. Reason constantly complained of shoulder, arm, and hand pains, and that since her injury plaintiff could no longer cook or perform her usual household duties.
Plaintiff testified that she is still suffering from almost constant pain, has much difficulty sleeping, and that she cannot fully open her hand or close it without help from the other hand, and then only with accompanying pain. She also testified that although she started working for a T. G. & Y. store in September, 1972, she works only occasionally because of her recurrent pains. Her duties there include working at a cash register and in the lingerie department. She stated that she had been forced to learn to use her left hand to perform these duties.
Where there is a conflict in medical testimony considerable weight will be given to the testimony of the injured employee. Joseph v. Aetna Insurance Co., 183 So.2d 762 (La.App. 1st Cir. 1966); Barnett v. Walther Bros. Co., 59 So.2d 487 (La.App. Orleans, 1952). The trial court clearly had faith in plaintiff's veracity, as to her complaints of pain, as it stated in its opinion:
". . . . the Court's observation of this plaintiff, convinces it that there is something wrong with her which is disabling. . . The Court feels as he [Dr. Kirgis] does; her complaints are real and not imaginary; it feels she is disabled and that this disability is for an indefinite time."
*336 Applicable here is the rule that the findings of facts by the trial court, particularly those involving the credibility of witnesses are entitled to great weight on appeal. The trial judge's conclusions as to the facts will not be disturbed unless found to be clearly erroneous. Breaux v. Kaplan Rice Mill, 280 So.2d 923 (La.App. 3rd Cir. 1973); Blanchard v. Liberty Mutual Ins. Co., 280 So.2d 592 (La.App. 3rd Cir. 1973); Jackson v. American Mutual Liability Ins. Co., 242 So.2d 903 (La.App. 3rd Cir. 1971).
In considering the medical evidence, and the lay testimony, we are of the opinion that the trial court was not manifestly erroneous in concluding that plaintiff had sustained her burden of showing that she is unable to return to the same type of work that she was doing before her injury. Therefore we agree with the conclusion that plaintiff remains totally and permanently disabled.
As this court has set out previously, should plaintiff's disability eventually disappear, defendant has its remedy. Where a claimant is found totally disabled at the time of trial, and the evidence is conflicting or uncertain as to when he may recover, compensation should be awarded for the maximum number of weeks prescribed for permanent disability since defendant's employer is protected by the provision permitting revision of the judgment after six months, should the disability terminate or lessen. Bushnell v. Southern Farm Bureau Casualty Ins. Co., 271 So.2d 267 (La.App. 3rd Cir. 1972); Comeaux v. Ashy Enterprises, Inc., 195 So.2d 752 (La. App. 3rd Cir. 1967); Andrus v. Great American Ins. Co., 161 So.2d 109 (La.App. 3rd Cir. 1964).
On the question of penalties and attorney fees, whether the actions of an employer or his insurer are arbitrary, capricious, or without probable cause, in discontinuing workmen's compensation benefits depends primarily upon the facts existing and known to the employer or insurer at the time payments were stopped. Lee v. Smith, 248 La. 16, 176 So.2d 413 (1965).
Defendants terminated benefits on the basis of the letter and accompanying reports from Dr. Thomas Flynn, dated July 10, 1972. After reporting his findings Doctor Flynn made the following statement:
"I feel that this patient is able to carry out her usual occupation at this time without limitation."
Plaintiff-appellee submits that Doctor Flynn did not examine Mrs. Reason's wrist or arm, from which her main complaint stemmed, and therefore defendants were arbitrary and capricious in terminating compensation. The reports sent on July 10, 1972, however, indicate that his examination, although primarily in the neck and upper shoulder area, included the wrist and arm.
Under the Workmen's Compensation Act it is clear that an employer or his insurer has a responsibility to an injured employee to continue compensation payments for the full period of disability. But this duty is not so onerous as to make every termination of benefits grounds for liability. Under certain circumstances an employer or his insurer are justified in stopping payments, without fear of being assessed penalties and attorney fees. One such situation is where termination is predicated upon a physician's report showing plaintiff to be fully recovered and able to resume his former work-connected duties. Straughter v. Cesco, Inc., 262 So.2d 126 (La.App. 1st Cir. 1972); Addison v. Neeb Kearney & Co., 252 So.2d 471 (La.App. 4th Cir. 1971). As the discontinuance of benefits in the instant case was predicated upon such a report defendant's refusal to continue compensation payments was neither arbitrary or capricious.
For the above and foregoing reasons the judgment of the trial court is affirmed at appellants' costs.
Affirmed.