CULPEPPER, Judge.
This is a workmen’s compensation case. Plaintiff contends he sustained an accidental injury which required removal of his left eye. The eye was already sightless. He seeks compensation under the schedule of payments for loss of an eye, LSA-R.S. 23:1221, (4), (i), or, in the alternative, for disfigurement about the face or head, LSA-R.S. 23:1221 (4), (p). From an adverse judgment, plaintiff appealed.
The issues are: (1) Did plaintiff sustain a compensable accident? (2) If so, is the accident causally related to the loss of the eye ? (3) Is plaintiff entitled to compensation for loss of an eye or, alternatively, for disfigurement?
The general facts show that on October 10, 1968, plaintiff was operating a bulldozer near Krotz Springs, Louisiana, for the defendant, employer, St. Martin Construction Company, Inc. He testified sand fell in his eye. His nephew, McLane Francis, who was acting as swamper, went to the truck and brought back a glass of water with which plaintiff rinsed the eye. The nephew corroborated these facts.
Plaintiff says he kept on working Thursday, Friday and Saturday, but the eye continued to get worse. This is substantiated by plaintiff’s wife who testified that when he returned home at night the eye was red and inflamed. On Monday, October 14, 1968, plaintiff went to Dr. Leon Slipakoff, an eye specialist in New Iberia. This physician said something had apparently fallen into the eye. It was inflamed and looked terrible. He started treatment with antibiotics but said the prognosis was poor. Finally, on October 25, 1968, the eye ruptured, requiring surgical removal.
We think the testimony of the plaintiff, as corroborated by his nephew, his wife and Dr. Slipakoff, is sufficient to prove that while he was operating the bulldozer he got something in his eye and this caused the injury complained of. We conclude that a work-connected accident is proved.
The next issue is whether there is a causal relationship between the accident and the loss of the eye. Plaintiff testified the eye was first injured in about 1948 by caustic soda. The evidence is vague as to this first injury, but when Dr. Slipakoff first saw plaintiff on September 3, 1957, for complaints of pain and redness of the eye, the cornea was already badly scarred. The eye was white and plaintiff had no vision except that he could see the motion of a hand within about 12 inches of the face. *237 The doctor treated the inflammation and it apparently subsided.
Dr. Slipakoff next saw plaintiff on April 6, 1966, after something had again fallen into the eye. The doctor says that by this time the cornea was becoming very thin and was beginning to bulge. Plaintiff still had only “hand motion vision.” Since the condition was irreversible, and the eye was likely to rupture at any time. Dr. Slip-akoff advised plaintiff in 1966 to have the eye removed and replaced with a prosthesis. Plaintiff refused.
The next time Dr. Slipakoff saw plaintiff was October 14, 1968, the occasion mentioned above. The eye was badly inflamed, did not respond to treatment and finally ruptured on October 25, 1968. This physician said the cause of the rupture was probably that something had gotten into the eye, it became inflamed and plaintiff rubbed it, causing the cornea to finally burst and the eye to collapse.
On referral by Dr. Slipakoff, plaintiff was seen on October 25, 1968 by Dr. R. S. St. Dizier, an eye surgeon. This physician testified plaintiff gave a history of rubbing the eye and causing it to burst. The fluid in the eye gushed out and the eye collapsed. It was subsequently removed and a prosthesis substituted.
Under the evidence outlined above, we conclude there was a causal connection between the accident and the loss of the eye. It is true the eye was already sightless and the cornea was becoming progressively thinner. But, the immediate cause, according to the testimony of the plaintiff and the physicians, was that after plaintiff got something in his eye while operating the dozer, the eye became inflamed, plaintiff rubbed it and finally it ruptured.
This case falls within the established jurisprudence that an employer accepts in employee as he finds him and compensation must be paid where a work-connected accident aggravates or accelerates a pre-existing condition, Deville v. Travelers Insurance Company, La.App., 176 So.2d 824; Allen v. Insurance Company of North America, La.App., 216 So.2d 400.
The next issue is whether, as a matter of law, plaintiff is entitled to compensation under LSA-R.S. 23:1221, (4), (i) for the loss of an eye which was already sightless. This issue has been considered in only one case from the appellate courts of Louisiana, Haas v. Globe Indemnity Company, 16 La.App. 180, 132 So. 246 (1st Cir. 1931), in which there was no application to our Supreme Court for writs. The claimant in Haas had a little more vision than the present plaintiff. The decision says Haas could “discern objects and could also count the fingers of the hand and read bold type and headlines in the newspapers at a distance of eight inches or a foot.” However, he had no “industrial use” of the eye and it did not contribute to his earning ability. The court discussed cases from other jurisdictions, pro and con, and concluded as follows:
“The defense of comparative vision or the prior loss of the industrial use of the eye seems to be presented here for the first time in our jurisprudence; but if we are to give consideration to the adjudications of appellate courts in other jurisdictions where, in workmen’s compensation statutes, like in ours, compensation is allowed ‘for the loss of an eye,’ we are bound to hold, under the weight of authority, that the doctrine does not apply here.
“Most of the decisions, as we view them, are grounded on the clear provisions of the statute which, awards compensation ‘for the loss of an eye’ and makes no reference whatever to any impairment of the sight or the loss of any degree of vision therein.”
From our research, we cannot say the majority rule supports plaintiff’s position. There are many cases on each side. Some cases from other jurisdictions supporting the claimant are General Motors Corpora *238 tion v. Vaccarini, 8 Terry 499, 93 A.2d 739 (Del.1952), recovery allowed for both loss of sight and disfigurement resulting from the same accident; Hobertis v. Columbia Shirt Company, 186 App.Div. 397, 173 N.Y.S. 606, where plaintiff had 50% vision before loss of eye; Liimatta v. Calumet & Hecla Mining Co., 229 Mich. 41, 201 N.W. 204; Mosgaard v. Minneapolis St. Railway Company, 161 Minn. 318, 201 N.W. 545; Chicago Bridge & Iron Company v. Industrial Commission, 316 Ill. 622, 147 N.E. 375. Among cases supporting defendant are Rye v. Chevrolet Motor Company, 229 Mich. 39, 201 N.W. 226; Leed v. State Workmen’s Insurance Fund, 128 Pa.Super. 572, 194 A. 689 (Penn.1937); Brown v. State Workmen’s Insurance Fund, 131 Pa.Super. 226, 200 A. 174 (Penn.1938); London Guarantee & Accident Company v. Industrial Commission, 76 Colo. 155, 230 P. 598; Ladd v. Foster Bros. Mfg. Co., 205 App.Div. 794, 200 N.Y.S. 258; Dyer v. Abrasive Dressing & Tool Company, 315 Mich. 215, 23 N.W.2d 640; Iacone v. Cardillo, D.C., 104 F.Supp. 675, affirmed, 208 F.2d 696, award refused for disability but allowed for disfigurement.
With all due respect to the court in the Haas case, we find the rationale of the decision difficult to follow. Our jurisprudence is established that where there is loss of the sight of an eye, without loss of the eye itself, compensation is due under the schedule of payments for loss of an eye, LSA-R.S. 23:1221(4), (i), Arnold v. Solvay Process Company, 207 La. 8, 20 So.2d 407 (1944) and Weber v. Kieckhefer Container Company, La.App., 45 So.2d 562. The theory of these cases is that the loss of function of the eye is tantamount to loss of the eye itself, since the effect on the employee’s earning ability is the same. But, in a case, like the present, where the function of the eye has been previously lost, it seems illogical to allow recovery under this particular statutory provision for the subsequent loss of the eye itself, since there has been no further reduction of plaintiff’s earning ability. Furthermore, it is apparent that in some cases there could be double recovery for the loss of the same eye, i.e., once for the loss of function and again for the loss of the eye itself.
We think it is more logical in such cases to allow recovery for disfigurement of the face, under LSA-R.S. 23:1221(4), (p), provided the facts show there actually is disfigurement. Under our jurisprudence, compensation is allowed only where the injury is materially disfiguring and is permanent in character. Ousley v. Employers Mutual Liability Insurance Company of Wisconsin, La.App., 121 So.2d 378 (1st Cir.1960) and the authorities cited therein.
Defendants make a strong argument that no recovery should be allowed in the present case, under this provision of the statute, because plaintiff’s appearance with the prosthesis is better than it was with his white eye. This contention is supported by the testimony of Dr. Slipakoff that the eye looks better with the prosthesis than it did before the injury. Pictures filed in evidence show that before the accident the eye appeared white due to scarring of the cornea. After the removal of the natural eye, the only thing which is noticeable is that the eyelids appear to be more open, as if plaintiff is staring, and the false eye does not have a full range of movement. We conclude the evidence does not show material disfigurement. Actually, plaintiff’s facial appearance is as good or better than it was before the accident.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.
Application for Rehearing
En Banc. Rehearing denied.