252 So.2d 471 (1971)
Thomas ADDISON
v.
NEEB KEARNEY & COMPANY and the Continental Insurance Company.
No. 4532.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1971.
Rehearing Denied October 6, 1971.
Walter F. Gemeinhardt, New Orleans, for plaintiff-appellant.
Christovich & Kearney, John J. Cooper, New Orleans, for defendants-appellees.
Before SAMUEL, REDMANN and BARNETTE, JJ.
SAMUEL, Judge.
Plaintiff filed this suit for total and permanent disability benefits under the Louisiana Workmen's Compensation Statutes (LSA-R.S. 23:1021 et seq.) against his employer, Neeb Kearney & Co., Inc., and the latter's alleged compensation insurer, The Continental Insurance Company. His petition alleges: The accident occurred on March 27, 1969 while plaintiff, a freight handler, was loading a freight car. A car door became jammed and the attempt to open the door caused a board to break and strike plaintiff on the side of his face, fracturing the right cheek bone. An operation was performed to repair the fracture.
*472 Defendants answered, correcting the name of the defendant insurer to the Fidelity & Casualty Company of New York, averring medical expenses of $552.04 and $443.57 in compensation (from March 28, 1969 through June 4, 1969) had been paid and, as plaintiff was able to return to work June 4, 1969, no further payments were due.
Following trial on the merits, the district court concluded plaintiff was not permanently disabled or seriously permanently disfigured and that the usefulness of a physical function had not been seriously permanently impaired within the meaning of the compensation statutes. The court did find he was entitled to an additional award for a period of eight weeks temporary disability from June 4, 1969 and an additional $134.57 for medical expenses. Accordingly, the judgment appealed from awards compensation benefits in the sum of $45 per week for eighteen weeks (from the date of the accident on March 27, 1969) and $134.57 for medical expenses, subject to a credit of $443.57.
Plaintiff has appealed. In this court he contends: (1) he is entitled to total and permanent disability benefits under LSA-R.S. 23:1221(2); alternatively, (2) he is entitled to disability benefits not to exceed 65% of his wages during 100 weeks under LSA-R.S. 23:1221(4) (p); and additionally, even if the judgment appealed from is otherwise affirmed, (3) he is entitled to reasonable attorney's fees under the provisions of LSA-R.S. 22:658. The defendants have not appealed nor have they answered plaintiff's appeal; in this court they only seek to have the trial court judgment affirmed.
The provisions of LSA-R.S. 23:1221 pertinent to the issues before us read as follows:
"Compensation shall be paid under this chapter in accordance with the following schedule of payments:
* * * * * *
(2) For injury producing permanent total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not beyond five hundred weeks.
* * * * * *
(4) In the following cases the compensation shall be as follows:
* * * * * *
(p) In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and as in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks." LSA-R.S. 23:1221.
Inter alia, LSA-R.S. 22:658 provides an insurer (including a compensation insurer) is liable for penalties and reasonable attorney's fees upon failure to make payment within 60 days after receipt of proof of loss and demand therefor "* * * when such failure is found to be arbitrary, capricious, or without probable cause * * *."
The accident occurred as alleged in plaintiff's petition. He was given emergency treatment at a medical clinic by Dr. Richard A. Faust and referred to Dr. George W. Hoffman, a plastic surgeon, who operated on March 29, 1969. The surgery consisted of an incision in the lower right eyelid, exploration of the right orbit, elevation of the depressed part of the fracture and use of a small surgical wire to hold the bone in position. The incision left a one and one-half inch scar. Plaintiff was discharged from the hospital on March 31 to be followed as an outpatient and referred to Dr. Moss L. Antony, an ophthalmologist, for examination of the eye, a routine procedure in cases of injury around the orbit.
*473 Dr. Hoffman informed plaintiff he could return to his regular employment as a freight handler on June 4 but asked him to return for another examination on July 7. On the latter date the doctor was satisfied with the progress of the facial injury but, as plaintiff continued to complain of headaches, referred him to Dr. W. Randolph Page, a neurosurgeon, for evaluation. Subsequently, plaintiff saw Dr. Homer D. Kirgis, also a neurosurgeon. The visits to Dr. Kirgis form the basis for the additional medical expenses of $134.57 awarded by the judgment.
Evidence in the record relative to the issues before us consists of medical reports of Touro Infirmary and Ochsner Clinic and those of Drs. Faust and Timothy J. Haley (a radiologist), the deposition of Dr. W. Randolph Page and the testimony of the plaintiff, Mr. Emmett Jackson (a lay witness), and Drs. Hoffman, Antony, Levy (a neurosurgeon) and Kirgis.
Plaintiff testified as follows: His duties included loading and unloading heavy (100 lb.) bags of commodities. He complained of continuing headaches and pain on the right side of his face under the eye and cheek bone, extending from the temple through the upper lip, and inability to stoop. His cheek bone protrudes more on one side then the other and his lip is tender and painful on the right side when shaving or smoking. In addition there is a numbness in the gums on the right side. He has done only light work since the accident and is unable to perform the heavy duties involved in the work he was doing at the time of the accident.
Plaintiff's lay witness, Jackson, testified only that he had known plaintiff since childhood and since the accident had seen him doing only minor jobs, such as cutting the yard grass, and that he always complained about his head, dizzy headaches, inability to do much stooping, and the fact that he had to take aspirins.
Dr. Faust's report indicates only the possible extent of plaintiff's injuries and the fact that he was given emergency treatment, x-rayed and discharged to the care of Dr. Hoffman.
X-rays taken by Dr. Haley on the date of the accident showed a fracture involving the inferior lateral wall of the right maxillary antrum and a fracture of the right zygomatic arch with no significant depression. X-rays taken later (April 18, 1969) revealed a single wire suture present at the fracture site involving the right infra-orbital ridge. The depression of the lateral figment was no longer present although there was marked irregularity of the infra-orbital ridge at the site of the fracture.
Dr. Hoffman was of the firm opinion plaintiff was able to return to his usual work of handling heavy weights on June 4, 1969 and thereafter. He did not believe plaintiff's complaints of pain while shaving, nor did he believe plaintiff had a permanent loss of sensation or sensitivity. The nerve was not transected, it was simply bruised, and from his experience with many other patients he had never found one with a permanent loss. A period of three months would be plenty of time for it to return to normal but six months to one year would be sufficient unless, and such was not the case here, the nerve was badly severed or evulsed. While plaintiff claims to have a protrusion on one side of his face as a result of the operation, Dr. Hoffman was unable to see any protrusion upon examination made at the trial.
Twelve days after the accident Dr. Antony found a small conjunctival hemmorhage, a minor residual of trauma, which he described as similar to a bruise anywhere in the body and of itself a very insignificant condition which takes about three weeks to subside. When he again saw plaintiff about one month after the accident, this doctor was of the opinion the one and one-half inch scar, barely detectable, would have no effect on the sensory area inasmuch as the infra-orbital nerve exits the skull below the scar. He stated that while there could be some disturbance *474 of the sensory powers around the lower eyelid, it would be most unusual to have increased sensitivity as a result of the accident and if it did exist later it would not be of great disturbance.
Dr. Levy saw plaintiff on December 2, 1969. His neurological examination was normal except for increased sensitivity over the right upper lip, right side of the nose and adjacent portion of the neck. In his opinion plaintiff sustained a concussion which should have subsided within three months after the injury. He attributed the increased sensitivity to the facial fracture and thought that sensitivity would be a nuisance and constitute a 3 to 5% partial permanent neurological disability, but would not impair plaintiff from performing his regular job of heavy lifting. He did not believe plaintiff's complaints of headaches and dizziness were the result of the injury in suit.
The deposition of Dr. Page indicated his examination was negative except for a loss of sensation in the right upper lip. He was of the opinion plaintiff sustained a subconcussive head injury with no neurological deficit and with the numbness related to the surgery and not to the injury per se. The loss of sensation in the lip would be temporary because there is no way to interrupt it permanently except by an intracranial operation. At his examination on June 10, 1969 he could find no neurological reason why plaintiff could not return to work, in fact he recommended return. The increased sensitivity could last up to one or one and one-half years. It is rare, but by and large by the end of a year or two it is completely gone. The sensation in the upper lip would be a nuisance and aggravation and is usually not noticeable after a few weeks or months. The doctor did not agree plaintiff suffered a concussion and stated any residual would not be a post concussion syndrome. The sensitivity in the upper lip should heal in a short period of time. If plaintiff's case was the exceptional, it could last longer, but it is not serious.
Dr. Kirgis, a plaintiff witness who saw plaintiff on July 16, November 21 (1969) and February 26 (1970), was of the opinion he sustained a cerebral concussion in the accident. Neurological examination was negative, leading the doctor to conclude plaintiff was experiencing a post cerebral concussion syndrome, but he felt plaintiff should be able to at least perform light work. On the last visit the doctor found a small area of the right infra-orbital nerve where there was a slight degree of increased sensitivity which the doctor expected would subside as time passed. He considered this an annoying type of injury which should lessen and probably clear over a period of two years. At that time Dr. Kirgis informed plaintiff further visits would be unnecessary.
Under our settled jurisprudence the plaintiff in a compensation case bears the burden of proof; as in other cases, he is required to establish his claim to a legal certainty and by a reasonable preponderance of the evidence. Hughes v. Chrysler Corporation, La.App., 216 So.2d 636, and cases cited therein. Here, with regard to plaintiff's first two contentions, we find not only that he has failed to carry that burden, but that, by more than a reasonable preponderance, the evidence is to the contrary.
To a very unusual extent the medical evidence is not in material conflict. With only one exception all of the doctors who expressed an opinion on plaintiff's ability to perform his regular work duties felt that he was capable of doing so. The sole exception referred to is Dr. Kirgis and he did not testify plaintiff could not perform his regular duties; that doctor only testified he should at least be able to perform light work at the time of the second visit on November 21, 1969. Clearly, plaintiff is not entitled to compensation for, in the words of the above quoted LSA-R.S. 23:1221(2), "permanent total disability to do work of any reasonable character".
Nor is there any merit to plaintiff's second contention for disability benefits *475 under the above quoted LSA-R.S. 23:1221(4) (p). He makes this claim both on the basis of alleged disfigurement about the face and impairment of the usefulness of a physical function.
Under the statute compensation for disfigurement is due only where the employee is "seriously permanently disfigured about the face or head". In the instant case plaintiff's counsel argues disfigurement results from the operative scar and a protrusion of or on the right cheek bone. The evidence establishes, without contradiction of any kind, that the one and one-half inch scar complained of is very well healed and barely detectible even on close scrutiny. No evidence in the record supports the claim that there is a protrusion of or on the right cheek bone and, as we have pointed out, Dr. Hoffman was unable to find such a protrusion when asked to do so during the trial. In addition to the evidence in the record, there is the obvious fact that the trial judge saw the plaintiff and specifically found there was no serious, permanent disfigurement about the face, a finding with which we thoroughly agree.
Also under the above quoted statute, compensation for impairment of a physical function is recoverable only "where the usefulness of a physical function is seriously permanently impaired". Here the argument is that there is such impairment due to the one and one-half inch scar, a protruding right cheek bone, dizziness and the neurological problem involving the right side of plaintiff's face. As has been pointed out, there is no protrusion. And the preponderance of the evidence clearly establishes the scar causes no problem relative to function; that if in fact dizziness does exist, which is extremely doubtful, it does not result from the accident in suit; and that if there is in fact a 3 to 5% residual disability, as Dr. Levy alone testified, this residual does not constitute a serious and permanent impairment of the usefulness of a physical function. During the course of his testimony Dr. Levy conceded this fact.
We are also of the opinion that plaintiff's third contention, relative to his claim for attorney's fees, is without merit. Aside from any other consideration, when the compensation insurer discontinues payment of disability benefits in reliance upon the advice of the treating physician, its failure to continue such payments is not "arbitrary, capricious, or without probable cause" within the meaning of LSA-R.S. 22:658. Boyer v. Gulf Tool Company, La.App., 174 So.2d 147. As the insurer in the instant case discontinued payment of benefits as of June 4, 1969 on advice from Dr. Hoffman that plaintiff could return to work on that date, there can be no liability for penalties or attorney's fees.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.