270 So.2d 329 (1972)
Robert DYKES
v.
NORTH RIVER INSURANCE COMPANY et al.
No. 9057.
Court of Appeal of Louisiana, First Circuit.
November 13, 1972.
Rehearing Denied December 26, 1972.
Writ Refused February 1, 1973.
*331 L. B. Ponder, Jr., Amite, for appellant.
Tom H. Matheny Pittman & Matheny, Hammond, for Carl Cutrer and Olympic Ins. Co.
Robert A. Collins, New Orleans, for Davill Petroleum Co., Inc., and North River Ins. Co.
Before LANDRY, TUCKER and CUTRER, JJ.
LANDRY, Judge.
Plaintiff Dykes (Appellant) appeals from a judgment dismissing his action in tort, and awarding him workmen's compensation at the rate of $10.00 weekly for eight weeks because of injuries received while Appellant was changing a large truck tire, the rim of which blew off and struck Appellant in the face. We affirm.
The basic facts are that on February 2, 1969, Appellant and two companions were employed by one Ray Holliday, operator of a Phillips 66 Service Station located in Kentwood, Louisiana, to install two new 10 × 20 tires on a truck owned by Carl Eugene Cutrer (Cutrer), the insured of Olympic Insurance Company (Olympic), for the agreed sum of $5.00. Cutrer had employed Holliday to do the chore for $6.50. Holliday operated the station pursuant to a lease from Davill Petroleum Company (Davill), whose chief stockholder, T. H. Davidge (Davidge) was record owner of the premises. Davill is insured by defendant, North River Insurance Company (North River). Davidge personally leased the property to Phillips 66 Petroleum Company (Phillips), which concern subleased to Davill, which in turn subleased to Holliday.
Plaintiff brings his action in tort against Holliday, Davill, North River and Cutrer, contending in effect that Holliday was the subcontractor of Davill, whose business is operating a chain of service stations. It is contended that Cutrer was aware the wheel in question was defective, and negligently *332 failed to inform Holliday and Appellant of this fact. Appellant also invokes the doctrine of res ipsa loquitur insofar as his tort claim is concerned. Alternatively, Appellant claims workmen's compensation benefits as Holliday's employee, during disability alleged to have lasted six months, and for an additional 100 weeks compensation for asserted facial disfigurement. The trial court granted Appellant judgment against North River for compensation at the rate of $10.00 weekly for 8 weeks, together with medical expense in the sum of $719.00. Plaintiff appealed praying for judgment in tort, and alternatively for the compensation demanded. North River and Davill answered plaintiff's appeal praying for reversal of the judgment rendered against North River for compensation and medical expense awarded, and alternatively praying that if compensation be found due plaintiff in any amount, the award of the trial court be affirmed. However, in brief and oral argument before this court, Davill and North River have abandoned their attempt to reverse the award granted below, and simply ask that the trial court's judgment be affirmed.
Appellant maintains the trial court erred in (1) failing to grant compensation for facial disfigurement; (2) failure to grant adequate compensation for disability; (3) failing to grant compensation against the alleged "principal contractor", Davill, and (4) failure to allow damages in tort against the alleged tort-feasors, Cutrer and Holliday.
We will first consider Appellant's claim in tort which is based on the alleged negligence of Cutrer and Holliday in failing to inform Appellant of known defects in the wheel which exploded and Holliday's reputed negligence in failing to furnish Appellant with adequate and safe tools and equipment to perform the work.
It suffices to say that the charge of negligence as respects the adequacy of equipment and tools is totally without foundation in the record.
As regards the contention that Holliday and Cutrer were aware of defects in subject wheel, proof on this issue consists of the testimony of Appellant's brother, mother and stepfather to the effect that approximately an hour and a half after the accident, they visited Holliday's station, and heard an unidentified party state in Cutrer's presence that Cutrer should have been aware the wheel was sprung. This unidentified party was reputed to have stated that he had been expecting something of the sort to happen, and Cutrer agreed that he too had been expecting such an occurrence. This testimony was denied by Cutrer. The trial court resolved this divergence of testimony in favor of defendants. Based on the record, we find no manifest error in this conclusion of fact. It is elementary that the finding of fact by a trial court will not be disturbed on appeal unless shown to be manifestly erroneous, especially where the issue resolved depends upon the credibility of witnesses. Dorsey v. Couteau, La.App., 264 So.2d 800.
In support of the contention that the doctrine of res ipsa loquitur applies to the asserted tort claim, Appellant cites several cases which simply pronounce the general rules and circumstances in which the rule may be invoked.
It is settled law that the principle of res ipsa loquitur is a rule of evidence to be applied at the end of the case when all of the evidence has been heard. American Employers' Insurance Company v. Fagot, La.App., 250 So.2d 842. Res ipsa loquitur, being a rule of evidence which creates a presumption of negligence, is to be sparingly applied, and should be resorted to only where the demands of justice make its application necessary. McCann v. Baton Rouge General Hospital, La.App., 258 So. 2d 618.
As a general rule, one of the principal elements of the res ipsa loquitur doctrine is defendant's knowledge and control of the instrumentality which causes the injury. Lutheran Church of Good Shepherd *333 of Baton Rouge v. Canfield, La.App., 233 So.2d 331. However, defendant's actual control at the time of injury is not always a necessary element, as evidenced by that line of authorities which apply res ipsa loquitur to injuries occasioned by exploding bottles of carbonated beverages. See, for example, Johnson v. Louisiana Coca Cola Company, La.App., 63 So.2d 459.
The record discloses that Cutrer has owned trucks for many years. It does not appear that he was particularly adept or expert in the repair of vehicles or that he was peculiarly qualified to determine wheel defects by mere inspection. He had left the vehicle at the station to have the tires changed. He was not present when the accident occurred. He exercised no actual control or supervision over the work.
Appellant's brother, Jimmy Dykes, and Henry Dunlap assisted Appellant in changing the tires. Being a former Army truck driver and heavy equipment operator, Appellant was thoroughly skilled in changing large truck tires. Appellant did most of the work, his assistants serving mainly to hand him tools as needed. Appellant's testimony indicates that the entire time he was changing subject tire, nothing indicated that the wheel was in any way defective or sprung. His testimony further shows that he first realized something was wrong with the wheel or rim when he attempted to replace the wheel on the vehicle. At this time, Appellant experienced difficulty in aligning the wheel on the lugs, which prompted him to remark to his assistants that the wheel was sprung, and immediately thereafter the accident occurred.
Considering all the circumstances of this case, we do not regard it as a proper instance in which to apply the doctrine of res ipsa loquitur. Here the instrument was under the control of Appellant who was knowledgeable in the matter of changing large truck tires. Cutrer was not present and had no control over the work. Cutrer did not furnish the tools or equipment with which the work was to be done. Neither was Cutrer the manufacturer of the instrument. He was merely its owner, having purchased same in ordinary course of trade. It is equally clear that, whereas Holliday was present at the station during the course of the work, the actual work was done by Appellant. Nor do we find that a large truck tire is necessarily a dangerous instrumentality. We conclude the facts do not justify the inference that Appellant's injury would not have occurred but for negligence on the part of Holliday and Cutrer. Saunders v. Walker, 229 La. 426, 86 So.2d 89.
Appellant's claim for maximum compensation is based on the premise that the minimum wage for such work is $1.60 per hour, which fact is conceded by defendants. On this basis, it is argued that wages should be fixed on an eight hour day, six day week, at the rate of $1.60 per hour, or $76.80 weekly. It is further contended that 65% of $76.80 exceeds the maximum compensation rate, consequently compensation should be fixed at the maximum $45.00 rate in effect at the time of injury. In so contending, Appellant relies on LSA-R.S. 23:1202. Appellant also contends he suffered temporary total disability for a period of six months, and should have been allowed maximum compensation for 26 weeks, pursuant to LSA-R.S. 23:1221, instead of 8 weeks at $10.00 weekly as allowed by the trial court.
The rate and number of weeks compensation to which Appellant is entitled are governed by LSA-R.S. 23:1021(11), which reads as follows:
"(11) `Wages' means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows: * * * (d) If the employee is employed on a unit, piecework, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer *334 during said twenty-six week period and multiplied by five; provided, however, that if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by five."
Also pertinent are the provisions of LSA-R.S. 23:1202, which stipulates that minimum compensation shall be $12.50 weekly, provided that if an employee were receiving less than $12.50 in weekly wages when injured, the weekly rate shall be full wages.
The record is clear that Appellant was hired on a unit or piecework basis for the sole purpose of changing two truck tires. It is likewise clear that the $5.00 paid for this service was to be shared equally by Appellant and his two associates. It follows that Appellant's share of the sum paid amounted to $1.67. Since this was the only work Appellant ever performed for his employer, Holliday, Appellant's weekly wages must be computed in accordance with that portion of Section 1021(11)(d) above, which governs employment of less than 26 weeks duration. Therefore, dividing Appellant's gross earnings ($1.67) by the number of days worked, namely, one, we arrive at the sum of $1.67 which, multiplied by five results in a weekly wage figure of $8.35, which the trial court should have fixed as the weekly rate. As noted, however, Appellee, North River, has abandoned its complaint as regards the sum of $10.00 fixed below, consequently the award must stand.
We find the record barren of evidence to sustain the claim that Davill should be held liable in compensation on the ground that Davill was the prime contractor, and Holliday merely its subcontractor in the operation of the service station. As Davill's chief executive officer, Davidge testified the corporation acted as distributor for Phillips 66 products. As such, Davill leased various locations for the operation of service stations, including some owned by Davidge personally, and some by third persons. Admittedly, Davill operated some of these stations as its own. It also leased some locations to individuals for operation as the separate business of the lessee. Davill's sublease to Holliday was verbal, and in effect, provided that Holliday was the sole owner and operator. According to Davidge, Holliday was required to sell only Phillips 66 gasoline, the rent being computed upon a fixed charge for each gallon of gas sold. Except for gasoline, however, Holliday was free to sell any and all other automobile products and accessories he chose, even those offered by Phillips' competitors. From Davidge's testimony, it is clear that Davill could not control Holliday's daily operations, and that Holliday was not responsible to Davill for any specific end result. We conclude the trial court properly rejected Appellant's compensation claim against Davill.
Holliday was not called as a witness. He no longer operated the station at the time of trial, and was unavailable as a witness.
Appellant's claim of disability lasting six months is not supported by the evidence. Dr. Carlton Faller, Appellant's treating physician, saw plaintiff on the day of the accident, which was February 2, 1969. His examination disclosed the following injuries: A large scalp laceration with a "Y" area in the forehead extending into the hairline; an abrasion over the nose, resulting in removal of tissue from the bridge of the nose, and a laceration of the chin on an angle between the front and bottom of the chin on the right. X-rays disclosed no fracture of the nose, neck or skull. Dr. Faller kept Appellant in the hospital from the date of the accident, until February 11, 1969, primarily for observation. On February 11, Dr. Faller removed the sutures from Appellant's wounds, and discharged Appellant from the *335 hospital. At this time, Dr. Faller found no evidence of cervical muscle spasm. Appellant was seen by Dr. Faller on February 14, 1969, on which occasion Appellant complained of a stiff neck. Dr. Faller found Appellant progressing nicely, and prescribed no medication on this visit. Appellant was again seen by Faller on February 28, 1969, at which time, Appellant complained of head and neck pains although Appellant then had full range of neck motion. Dr. Faller never saw Appellant again until the date of the trial. Dr. Faller stated that Appellant has a permanent scar at the hairline in the center of the forehead, a single scar on the bridge of the nose, the area thereof being lighter in color than the rest of the nose. Additionally, Dr. Faller noted a small dark area on the right side of Appellant's nose, and a scar on the right chin. In essence, Dr. Faller testified that Appellant should have been able to resume employment in about eight weeks following the accident. Appellant's testimony also indicates that Appellant was physically able to resume work within about two months of the accident, but that Appellant was out of work for six months due to his inability to find employment. Under the circumstances, we find no error in the award of 8 weeks compensation made by the trial court.
We likewise find the trial court properly rejected appellant's claim for compensation for facial disfigurement. LSA-R.S. 23:1221(4)(p) provides that in cases not falling within any other provisions of said section, an employee, who is seriously and permanently disfigured about the face or head, may be allowed such compensation as is reasonable and in proportion to compensation provided for specific disability, not to exceed 65% of wages for 100 weeks.
In addition to the description of Appellant's scars as testified to by Dr. Faller, Appellant testified that several of his teeth were chipped and loosened. No photographs of Appellant were offered in evidence.
Our jurisprudence is settled to the effect that recovery for facial disfigurement pursuant to Section 1221, above, may be awarded only where the injury is materially disfiguring, and is permanent in nature. Addison v. Neeb Kearney and Company, La.App., 252 So.2d 471; Landry v. Liberty Mutual Insurance Company, La.App., 236 So.2d 235. The trial court's determination of this factual issue may not be disturbed unless shown to be manifestly erroneous. Not only do we fail to find error with the conclusion reached, we are in agreement therewith.
The judgment of the trial court is affirmed; all costs of this appeal to be paid by Appellant, Robert Dykes.
Affirmed.