427 So.2d 921 (1983)
Lester E. DAVIS, Plaintiff-Appellant,
v.
UNITED PARCEL SERVICE, INC., et al., Defendants-Appellees.
No. 82-507.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1983.
Rehearing Denied March 22, 1983.
*922 Fuhrer & Flournoy, George A. Flournoy, Alexandria, for plaintiff-appellant.
Provosty, Sadler & deLaunay, Albin Provosty, Alexandria, for defendants-appellees.
Before GUIDRY, CUTRER and LABORDE, JJ.
CUTRER, Judge.
This appeal arises out of a malpractice suit by Lester E. Davis against Andrew Vallien, an attorney, wherein Davis alleged Vallien was negligent when he failed to file a workmen's compensation claim against his employer, United Parcel Service, Inc. (UPS), within the prescriptive period of one year. After a jury trial, judgment was rendered dismissing Davis' suit. Davis appealed. We affirm.
Lester Davis, while driving a truck in the course and scope of his employment for UPS, was injured in an intersectional collision on September 28, 1979, in the City of Natchitoches, Louisiana. Curtis Babbitt was the driver of the automobile which collided with Davis' truck. Dr. J.O. Trice happened to be a witness to the accident and rendered first aid to Davis at the scene. Davis was then taken to the emergency room of the local hospital where Dr. Trice examined Davis and treated him for his injuries which were of a minor nature and included lacerations of the left forearm, elbow, and one on the face near the left eyebrow. Also, Davis had sustained some contusions (bruises) of the head and knees. Dr. Trice also saw Davis on October 1 and October 8, 1979. This was the extent of the physician's treatment of Davis. Davis returned to work approximately two weeks after the accident.
A short time later Davis retained Vallien to represent him in his claims arising out of the accident. Vallien later made demands upon Babbitt (now deceased) and his alleged insurer, Aetna Life and Casualty Insurance Company (Aetna), for damages incurred by Davis. Being unable to effectuate a compromise of the demand for damages, Vallien filed a tort suit on behalf of Davis against the succession of Babbitt and Aetna. This suit was filed on September 26, 1980, within two days of one year prescription.
Following the filing of suit, Davis discharged Vallien and retained the services of his present attorney. After the discharge, Vallien received a check of $1,000.00 as an offer of compromise from Aetna. This check was transferred to Davis by Vallien but was apparently never negotiated. In June 1981, through the recommendation of his present attorney, the suit against Aetna was settled for $1,000.00.
In September 1981, Davis filed suit for workmen's compensation benefits against UPS and its compensation carrier, Liberty Mutual Insurance Company (Liberty Mutual), on the ground of facial disfigurement; and, in the alternative, filed the malpractice suit against Vallien and his insurer, Northbrook Insurance Company (Northbrook).
The trial court granted the motion for summary judgment filed by UPS and Liberty Mutual on the ground that Davis' disability ended by October 15, 1979, and he had been paid all compensation payments that were due, the final payment being made October 25, 1979. It was alleged that the workmen's compensation action against them had prescribed as approximately twenty-one months had elapsed since the last payment was made. Judgment was rendered dismissing the suit against UPS and Liberty Mutual.
After a jury trial, judgment was rendered dismissing Davis' malpractice suit *923 against Vallien and his insurer. Davis appealed.
Davis assigns several specifications of error. We have examined them and find three of them are meritorious. These errors emanate from jury instructions and "interrogatories" presented by the trial court and were of such substance that it will be necessary for this court to evaluate the evidence and decide the case and render judgment on the record. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
The errors which we shall discuss are as follows:
(1) The trial court's erroneous charge pertaining to the burden of proof in a malpractice suit against an attorney; and
(2) The errors present in the "interrogatories" presented to the jury.

BURDEN OF PROOF
The trial court instructed the jury on the burden of proof as follows:

"[T]he plaintiff has the burden of proving the following elements by a preponderance of the evidence. He must demonstrate first that the loss, which he says he suffered, was, in fact, caused by the conduct of the defendant. Two, that the conduct of the defendant was below the standards, which I have told you are applicable to the defendant's conduct. And, three, that there was actual loss to the plaintiff. If you are satisfied that the plaintiff has established these three elements, then plaintiff is entitled to recover....."
Counsel for Davis objected on the ground that, once Davis established that Vallien allowed prescription to run on this compensation claim, the burden of proof shifted to Vallien to show that the compensation claim had no merit and/or would not have resulted in recovery.
The trial court's charge, as given, was the correct law at the time this case was tried (March 1982). The charge presented by counsel for Davis was not the law at that time. By coincidence, however, the Supreme Court, in the case of Jenkins v. St. Paul Fire and Marine Insurance Co., et al., 422 So.2d 1109 (La.1982), has changed the rule of burden of proof in this type of case. The rule in Jenkins is very similar to that submitted by counsel for Davis.
In making the change in the burden of proof the court, in Jenkins, stated as follows:

"[W]e granted certiorari to review that judgment. 399 So.2d 607. The grant was prompted to some extent by the concern over the `case within a case' approach used by the court of appeal in this case and by other courts in earlier decisions. Under that approach a plaintiff in legal malpractice litigation must prove not only that the attorney was negligent in handling the client's claim on litigation, but also that the claim or litigation would have been successful but for the attorney's negligence. See King v. Fourchy [47 La.Ann. 354], 16 So. 814 (La. 1895); Dyer & Stevenson v. Drew, 14 La.Ann. 657 (La.1859); Spiller v. Davidson, 4 La.Ann. 171 (La.1849); Toomer v. Breaux, 146 So.2d 723 (La.App. 3rd Cir. 1962); Lewis v. Collins, 260 So.2d 357 (La.App. 4th Cir.1972).

I.

"In the present case, the attorneys concede that they were negligent in not filing suit until two days after prescription had run.1 The remaining question is whether the client, after proving the attorneys' negligence, must also establish the validity of the underlying claim by proving that the attorneys' negligence caused him damages and by further proving the amount of the damages.

"Plaintiff contends that, once the client has established negligence on the part of the attorney, the burden should be placed on the negligent attorney to prove that the mishandled claim or litigation would have been unsuccessful.

"Causation, of course, is an essential element of any tort claim. However, once the client has proved that his former attorney accepted unemployment (sic) *924 and failed to assert the claim timely, then the client has established a prima facie case that the attorney's negligence caused him some loss, since it is unlikely the attorney would have agreed to handle a claim completely devoid of merit. In such a situation, a rule which requires the client to prove the amount of damages by trying the `case within a case' simply imposes too great a standard of certainty of proof. Rather, the more logical approach is to impose on the negligent attorney, at this point in the trial, the burden of going forward with evidence to overcome the client's prima facie case by proving that the client could not have succeeded on the original claim, and the causation and damage questions are then up to the jury to decide. Otherwise, there is an undue burden on an aggrieved client, who can prove negligence and causation of some damages, when he has been relegated to seeking relief by the only remedy available after his attorney's negligence precluded relief by means of the original claim...." Footnote omitted.)
1 In the lower courts, each attorney claimed that the client had established an attorney-client relationship with the other, who was solely responsible to file the suit timely. The jury found, however, that they were solidarily liable and that one could not recover over against the other. No such claims have been urged in this court.
The Jenkins case is clearly retroactive as this rule is procedural. The Jenkins rule, being retroactive, has the effect of rendering erroneous the instructions given by the trial court. As we have previously stated, the errors herein are such that we must decide the case on the record and, in doing so, we will bear in mind the Jenkins rule in evaluating the evidence.

"INTERROGATORIES" PRESENTED TO THE JURY FOR DETERMINATION
At the close of the jury charges, the trial court presented the following to the jury for their determination. (The jury "answered" as indicated.)
"INTERROGATORY NO. 1
We, the Jury, find that plaintiff has a serious permanent disfigurement of the face in the form of scars and that the scars are residuals from lacerations sustained in the work-related accident of September 28, 1979.
 YES `Yes' NO ____
"(IF YOU ANSWER INTERROGATORY NO. 1 `YES', ANSWER INTERROGATORY NO. 2. IF YOU ANSWER INTERROGATORY NO. 1 `NO', DO NOT ANSWER ANY MORE INTERROGATORIES. HAVE THE FOREMAN SIGN THIS VERDICT FORM AND RETURN TO THE COURTROOM.)
"INTERROGATORY NO. 2 We, the Jury, find that defendant, Andrew Vallien, committed malpractice in failing to file a workmen's compensation suit within the time permitted by law to recover compensation for plaintiff because of a serious permanent disfigurement of the face.
 YES ____ NO `No' "
Counsel for Davis properly entered objections to these "interrogatories."[1]
LSA-R.S. 23:1221(4)(p) provides, in pertinent part, "[w]here the employee is seriously permanently disfigured about the face or head ... the court may allow such compensation as is reasonable...." The jurisprudence of this and other circuits has consistently held that, for a scar to be compensable under R.S. 23:1221(4)(p); i.e., for an employee to be considered "seriously permanently disfigured," the scar complained of must be materially disfiguring and permanent in character. Karmazin v. Kaiser Aluminum & Chem. Corp., 374 So.2d 202 (La.App. 4th Cir.1979), (i.e., a facial scar which significantly mars the habitual facial *925 expression and is such as to attract attention); Lewis v. Orleans Parish Sch. Brd., 371 So.2d 328 (La.App. 4th Cir.1979), writ den., 373 So.2d 526 (La.1979), (well settled); Templet v. Travelers Insurance Company, 278 So.2d 805 (La.App. 1st Cir.1973), (well settled); Dykes v. North River Insurance Company, 270 So.2d 329 (La.App. 1st Cir. 1972), writ ref'd, 272 So.2d 375 (La.1973), (jurisprudence is settled); Addison v. Neeb Kearney & Company, 252 So.2d 471 (La. App. 4th Cir.1971), (scar complained of barely detectable even on close scrutiny; trial judge found no serious permanent disfigurement); Landry v. Liberty Mutual Insurance Company, 236 So.2d 235 (La.App. 3rd Cir.1970), (evidence does not show material disfigurement); Miller v. General Chemical Division, 128 So.2d 39 (La.App. 1st Cir.1961), (acid burns; disfigurement is serious and permanent, award justified); Ousley v. Employers Mutual Liability Ins. Co. of Wis., 121 So.2d 378 (La.App. 1st Cir. 1960), [cites Malone, Louisiana Workmen's Compensation § 283, pp. 362-363 (1951), re: requirement that injury be materially disfiguring and permanent in character.] Thus, the jurisprudence has developed rather precise factual standards to be used in determining if an employee is "seriously permanently disfigured" as required by the statute.
LSA-C.C.P. art. 1811, paragraph (A), provides that the trial court "[m]ay require a jury to return only a special verdict in the form of a special finding upon each issue of fact."[2] As we consider Interrogatory # 1, we find that the court failed to ask the jury to make a specific finding of fact with regard to whether Davis' scar is materially disfiguring. The jurisprudence cited above reflects that an employee is "seriously permanently disfigured" only when a finding is made that the employee is materially disfigured and the scar is permanent in character. The jury was not asked to make such a finding although it was correctly charged on this point. The charge in this regard was as follows:

"In order for a plaintiff to establish that a facial scar is compensable, he must prove that it significantly mars his habitual facial expression and is such to attract attention; slight or insignificant scarring which is not readily noticeable is not compensable.... Accordingly, if you find that plaintiff's face or head is seriously permanently disfigured, that is, he has scars on his face or head which were caused by lacerations sustained in the traffic accident on September 28, 1979, and that the scars significantly mar plaintiff's habitual facial expression and are such as to attract attention, you may award plaintiff up to sixty-six and two-thirds percent of the weekly wage he was making at the time of the accident for 100 weeks. However, if you find that plaintiff's face does have scars which were caused by the traffic accident on September 28, 1979, but that the scars do not significantly mar plaintiff's habitual facial expression and are not such as to attract attention, then you may not make any award to plaintiff." (Emphasis added.)
The charge correctly sets forth the most recent statement of the jurisprudential threshold necessary in order for a facial disfigurement to be compensable. As stated in Karmazin, supra, the scars must significantly *926 mar plaintiff's habitual facial expression and must be such as to attract attention. A less precise, but more frequently used, statement of the standard would have been to charge the jury that it must find the scar "materially disfiguring and permanent in character" before a finding of "serious permanent disfigurement" could be made. It is not the charge to the jury that is in error. The error is found in the interrogatory submitted to the jury.
The first finding ("interrogatory") submitted by the court to the jury only mentions a finding of "serious permanent disfigurement." It does not set forth a finding that the scarring must "significantly mar Davis' habitual facial expressions and are such as to attract attention." Without this threshold finding, the jury's findings do not necessarily support a verdict for either the plaintiff or defendant.
It may be argued that the jury's finding in Interrogatory # 2, which seeks a finding as to whether Vallien committed malpractice by not timely filing the suit, which was answered "No," amounts to a finding that the scars on Davis' face did not mar Davis' habitual facial expression and are not such as to attract attention. For us to arrive at this conclusion would require speculation. Speculation cannot serve as a basis for a judgment rendered pursuant to a jury finding. If special findings of fact are to be required of a jury, these findings must present a clear resolution of each issue arising in this suit; i.e., negligence, causation, and, if applicable, damages. The findings herein do not resolve these issues.
We conclude that the findings of the jury are such that they would not serve as a basis for judgment either for the plaintiff or the defendant. For these reasons we are unable to give the usual weight to the jury findings and it becomes our duty to review the evidence and to render a proper judgment in accordance with applicable law. Gonzales v. Xerox Corporation, supra. In doing so we will consider the evidence and apply the burden of proof rule enunciated in Jenkins, supra.

NEGLIGENCE OF VALLIEN
It is undisputed that Vallien failed to file a workmen's compensation claim on behalf of Davis. Vallien stated that, when he first saw Davis, soon after the accident, he found out that Davis had been paid two weeks workmen's compensation and that he had returned to his regular duties. He stated that he did not notice any scars on Davis' face. He made no inquiries of Davis in this regard. We note, however, that on January 28, 1980, four months post-accident, Vallien received a letter from Dr. Trice which stated that Davis had "some disfigurement with a small scar over the left forehead region." Vallien did not inquire any further into the comments made by the doctor.
In the case of Ramp v. St. Paul Fire and Marine Insurance Company, 263 La. 774, 269 So.2d 239 (1972), the court stated as follows:
"An attorney is obligated to exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality. He is not required to exercise perfect judgment in every instance. However, the attorney's license to practice and his contract for employment hold out to the client that he possesses certain minimal skills, knowledge, and abilities....."
In this case, Vallien was on notice that Davis had some facial scar. Vallien owed Davis a duty to inform Davis of the disfigurement provision of the workmen's compensation statute and whether, in the opinion of Vallien, such statute would be applicable to the facts present. If Vallien felt that he would not have been successful in pursuing such a claim, he should not remain silent but he should so inform Davis and it would be Davis' decision whether he wanted to attempt the pursuit by employing another counsel or whether to abandon such claim upon the advice of Vallien. Vallien has the duty to inform his client of all possibilities and make recommendations thereon. If he fails to do this, he is not properly performing his duties in his representation of Davis. If he fails in this duty *927 by remaining silent and allows prescription to run, he is negligent and may be held liable for any losses to Davis that were caused by such negligence. Jenkins v. St. Paul Fire and Marine Insurance Co., supra. We conclude that Vallien was clearly negligent in this matter for not filing the claim, thus, the remaining question is whether such negligence caused any damages to Davis.

WHETHER SCARRING AND FACIAL DISFIGUREMENT WAS INCURRED BY DAVIS
Dr. Trice was the attending physician in this case. He saw Davis in the hospital emergency room on the day of the accident. He classified Davis' injuries as minor. He stated that Davis had a cut on his right forearm one and one-half inches in length. He had a cut one inch long in the lateral area of the left eye. Also, Davis had a small cut on the left elbow and contusions near the left eye and on the knees. The lacerations were sutured in the emergency room on September 29, 1979, and the sutures were removed on October 8th. Davis was released to go back to work on October 15, 1979.
Davis had some pre-existing scarring in the area of the forehead from childhood injuries. The only injuries that we are concerned with are the cut and/or contusions near Davis' left eye. Before trial, a deposition of Dr. Trice was taken by Davis' attorney. Before the deposition began Dr. Trice was shown three small scars near Davis' left eye. Two scars were near or in the eyebrow and one was lateral to the eye. It was suggested to Dr. Trice that these were the scars from cuts that the doctor had treated as a result of the accident. Dr. Trice did not have the hospital records that he had prepared when the treatment was rendered on the day of the accident. Without his notes he could not remember the exact nature of the injuries near Davis' left eye. He testified on deposition that the three scars near the left eye were related to the accident.
After the deposition and before trial, Dr. Trice examined the records he prepared and found that his deposition testimony was not correct. At trial Dr. Trice testified that, after reviewing his records, he found that Davis had incurred one cut, one inch long, lateral to the eye which he sutured. He stated that there was some contusion near the eye but that this would not cause scarring. We conclude that Davis had one cut, on the face, one inch in length, lateral to the left eye and which was sutured. The recovery was without incident. The lacerations left a minor scar. This brings us to a consideration of whether the scar is compensable under the workmen's compensation law.
Two attorneys, practicing in Natchitoches, Louisiana, were called to testify on behalf of Vallien. One of these testified that the scar from the one inch cut did not significantly mar Davis' habitual facial expression nor was it such as to attract attention. This testimony was as follows:
"Q. But, I'd like for you to specify for me, please sir, on what basis you reached your opinion that the scarring on this gentleman's face is not compensable?

"A. It, to me, does not fit the definition of the statute. I think, you know, it's a subjective thing. I might reach one opinion; you might reach one opinion; Mr. Provosty might reach one opinion; the Judge might reach one opinion, and it's a subjective thing, but I think you have to look at his age, the location of the scars, the prominence of them. He's Black. Fortunately it's not any keloid. He has no loss of pigmentation. You have to look real close, you know, to see them in their location. II've had, you know dealings with Black people, unfortunately, sometimes when they scar they have a loss of pigmentation; sometimes they have what they call a `keloid' which I always heard, referred to as a child, as `proud flesh' where a big bump comes up and sometimes you have to do "Z" plastic surgery on them and things like that. And, I'm sitting here right now and I can't even see the scars on the left side of his face, you know....." *928 A second attorney, called by Vallien, testified to the same effect. His testimony was as follows:
Q. What factors did you base your opinion on that this scar's not compensable?
"A. Well, principally, that it does not strike me as being serious material disfigurement that's apparent and noticeable. I don't think that it quite frankly falls within the scope and purpose of the Workmen's Compensation Act. And, I don't view that what I see as being the scars complained of by Mr. Davis falls within the definition of the cases which I examined."
On the other hand, two other attorneys were called by Davis. These two witnesses both stated that they felt that the scars were compensable. They were of the impression that the three scars near the left eye were caused by the accident. Their conclusions were not based upon the fact that only one scar emanated from the accident.
Davis testified that his scars embarrassed him and that he had people to ask him about them. He was not able to say whether those persons were referring to the previously existing scars or to the scar caused by the cut in the accident.
Davis' wife, when asked about the scars, stated as follows:
"Q. And, your opinion as his wife, do they detract from his appearance?
"A. Yes, they throw it off a little.
"Q. Uhare theyhas it beenhas it been brought to your attention in any way that these scars may be evident or noticeable to others?
"A. Yes.
"Q. And whathow was this done?
"A. How are they noticeable to others?
"Q. How did you know that the scarsthat the scars on his face were noticeable to others?
"A. I had a friend to ask me about them; how did he get them."
We note that she didn't differentiate between the prior scars and the scar received in the accident. There are no photographs of Davis' face in evidence. The only description of Davis' facial scar is that given by the witness first quoted above.
As we review the records, the testimony of all witnesses and documentary evidence, we find that Davis received one cut and some contusions on the face. The one inch cut was sutured and recovery was without incident.
The scar was hardly detectable upon viewing same. There was no protrusion or discoloration associated with the healing of the wound. We find that Davis is not seriously, permanently disfigured about the face. The scar does not significantly mar Davis' habitual facial expression and is not such as to attract attention of other persons. Vallien has met his burden of proving that Davis would not have been entitled to workmen's compensation for disfigurement of the face or head area. For these reasons we shall render judgment in favor of defendants Vallien and his insurer and against Davis dismissing Davis' case.
For the reasons set forth, the judgment of the trial court dismissing the plaintiff's suit is affirmed. Plaintiff-appellant is to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] Following the trial judge's charges to the jury, he immediately sent them out for deliberations. He did not afford the attorneys an opportunity to make objections before deliberations began. This was error. LSA-C.C.P. art. 1793. The attorney for Davis entered his objection to the interrogatories at the first opportunity after the charge was finished. The trial court refused to consider same. The objection was timely under these circumstances.
[2] LSA-C.C.P. art. 1811(A) provides:

"A. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer, or may submit written forms of the several special findings which might properly be made under the pleadings and evidence, or may use any other appropriate method of submitting the issues and requiring the written findings thereon. The court shall give to the jury such explanation and instruction concerning the matter submitted as may be necessary to enable the jury to make its findings upon each issue. If the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue omitted unless before the jury retires, he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be presumed to have made a finding in accord with the judgment on the special verdict."