WICKER, Judge.
This appeal arises from a petition for worker’s compensation benefits filed on behalf of plaintiff/appellant, Karen Jordan, against defendant/appellee, Schwegmann’s Giant Super Markets, Inc. Jordan seeks compensation pursuant to La.R.S. 23:1221(4)(p) and alleges a serious and permanently disfiguring scar of the forehead as the result of a work-related accident. She also seeks penalties and attorney fees on the basis an MRI examination was not authorized timely. The trial judge denied Jordan’s claims and rendered judgment in favor of Schwegmann’s. Jordan now appeals the adverse judgment. We affirm.
On November 25, 1987 Jordan was employed by Schwegmann’s. On that date she fell and struck her head while in the course and scope of her employment. She was paid weekly compensation benefits and medical expenses. The sole issues at trial were her entitlement to penalties and attorney’s fees as well as for 100 weeks of compensation benefits under La.R.S. 23:1221(4)(p) for an allegedly permanently disfiguring scar on the forehead. The trial judge denied her claims. She now specifies the following errors on appeal:
1. The trial court erred in finding that the scar was not serious and permanent disfigurement, and
2. The trial court erred in failing to award penalties and attorney’s fees where defendant arbitrarily delayed the authorization of an MRI recommended by two of plaintiff’s treating physicians.

La.R.S. 23:1221(4)(p):

At trial it was stipulated that Dr. George T. Linder’s testimony would be in conformity with his written report. Dr. Linder is a plastic surgeon who in pertinent part wrote the following in his report dated March 15, 1990:
Examination limited to the forehead reveals a 3 ½ cm healed vertical scar. Decreased sensation distal to the wound and proximal to the wound.
My impression is that she sustained lacerating injury to the forehead leaving a 3½ cm scar. It is my opinion that any surgical procedure on this scar would not improve the appearance as it is minimal and will fade over time.
Jordan testified the cut on her forehead required nine stitches. She stated her friends and relatives notice the scar which has been present for three years. She complied with her counsel’s request she show her scar to the trial judge. She identified photographs taken in 1990 depicting the scar. She stated the photographs accurately represented the way the scar appeared on the date of trial.
La.R.S. 23:1221(4)(p) provides benefits “[i]n cases not falling within any of the provisions already made, where the employee is seriously and permanently disfigured[.]”
In his reasons for judgment the trial judge stated:
It was the impression of Dr. George Linder that the injury resulted in a 3½ cm scar which was minimal in appearance and would fade over time.
It was clear to this Court, after viewing the scar, that it was barely visible.
It is well settled that in order to recover for facial disfigurement under the statute, the injury must be materially disfiguring and permanent in nature. A faint and fading scar does not constitute compensable serious permanent disfigurement. Lewis v. Orleans Parish School Board, 371 So.2d 328.
In Davis v. United Parcel Service, Inc., 427 So.2d 921, 924-25 (La.App. 3rd Cir.1983) the court explained:
The jurisprudence of this and other circuits has consistently held that, for a scar to be compensable under R.S. 23:1221(4)(p); i.e., for an employee to be considered “seriously permanently disfigured,” the scar complained of must be materially disfiguring and permanent in character. Karmazin v. Kaiser Aluminum & Chem. Corp., 374 So.2d 202 (La.App. 4th Cir.1979), (i.e., a facial scar which significantly mars the habitual facial expression and is such as to attract *116 attention); Lewis v. Orleans Parish Sch. Brd., 371 So.2d 328 (La.App. 4th Cir.1979), writ den., 373 So.2d 526 (La.1979), (well settled); Templet v. Travelers Insurance Company, 278 So.2d 805 (La.App. 1st Cir.1973), (well settled); Dykes v. North River Insurance Company, 270 So.2d 329 (La.App.1st Cir.1972), writ ref’d, 272 So.2d 375 (La.1973), (jurisprudence is settled); Addison v. Neeb Kearney & Company, 252 So.2d 471 (La.App. 4th Cir.1971), (scar complained of barely detectable even on close scrutiny; trial judge found no serious permanent disfigurement); Landry v. Liberty Mutual Insurance Company, 236 So.2d 235 (La.App. 3rd Cir.1970), (evidence does not show material disfigurement); Miller v. General Chemical Division, 128 So.2d 39 (La.App. 1st Cir.1961), (acid burns; disfigurement is serious and permanent, award justified); Ousley v. Employers Mutual Liability Ins. Co. of Wis., 121 So.2d 378 (La.App. 1st Cir.1960), [cites Malone, Louisiana Workmen’s Compensation Section 283, pp. 362-363 (1951), re: requirement that injury be materially disfiguring and permanent in character.] Thus, the jurisprudence has developed rather precise factual standards to be used in determining if an employee is “seriously permanently disfigured” as required by the statute.
Dr. Linder’s report describes the scar as minimal and one which would fade over time. The trial judge viewed the scar and concluded it was “barely visible.” The photographs reveal Jordan does not have a materially disfiguring scar. There is no manifest error in the trial judge’s factual determination regarding the scar as the record amply supports his conclusion.
Appellant argues that the trial judge’s reliance on Lewis, supra was misplaced as such reliance would have compelled the opposite conclusion. In Lewis the Fourth Circuit held the trial judge did not commit error by disregarding the physician’s conclusion the scar was not materially disfiguring. Furthermore, the trial judge relied on his personal observation of the scar as well as the physician's conclusion the scar would be permanent. As mentioned previously, we find the record supports the trial judge’s factual determination in the instant case.
Appellant appears to urge this court to consider the scar described in Lewis to be identical with the scar in this case. However, the proper test is whether the trial judge’s findings of fact in the instant case constitute manifest error.
Finally, appellant contends that a permanent scar which does not constitute serious disfigurement is still compensable. However, “the scar complained of must be materially disfiguring and permanent in character.” Davis, supra at 924.
PENALTIES AND ATTORNEY’S FEES:
Appellant contends Dr. Hugh Fleming, her treating neurologist, recommended she undergo an MRI (magnetic resonance imaging) in October, 1988 but that there was a nine-month delay in authorization for the test.
At trial Andre James Roques, Jr., Schwegmann’s claims examiner, testified he handled Jordan’s claim. He admitted receiving counsel’s letter of October 19, 1988 requesting the MRI allegedly based on Dr. Fleming’s recommendation. Roques explained, “I had nothing in my possession suggesting that the doctor was recommending such a test.”
Roques testified he received a letter dated November 17, 1988 with an attached report from Dr. Fleming stating, “I feel that it would be appropriate for her to have an MRI scan.” However, Roques stated he had no “records suggesting the doctor formally requested that test.” He explained the procedure between himself and Dr. Fleming whenever a request was made for further tests as follows:
Q. Well, after receiving that letter from me of November 17th, 1988 and the report did you make any inquires [sic] to Dr. Fleming’s office as to whether he was recommending versus suggesting the test?
A. No, I did not because it’s customary with these doctors when they’re ready to do a test to call to get verbal authorization for payment. He did it on the other *117 tests. He did an EMG, EEG and whatever they wanted someone from their office called and requested and at the time we received that call we verified it.
Q. Now, in the November 17th, 1988 letter we specifically requested that the MRI be authorized at Jefferson Imaging or one of the available facilities near East Jefferson Hospital; is that correct?
A. That is correct.
Q. But you took no initiative to contact any facility and set up an MRI after receiving this letter, did you?
A. The physician sets up an MRI. An adjuster doesn’t set things up. The doctor has to call those facility [sic].
Q. Well, in answer to my question, did you or did you not take the—
A. No, I did not call any facility and set up an MRI.
Q. When did you ultimately authorize an MRI? Does your file reflect that?
A. If you will bear with me again while I go through these reports. On July the 11th, 1989. [sic] Dr. Fleming sent, on or about that time, sent me a report which was a six line report that contained a number of other dates.
And it says, “Since I last saw her she is still having head pain and now complains of neck pain. Her examination shows no objective findings. I have told her to try to continue on the medication and I agree with Dr. Johnston that we should go ahead and get an MRI scan to rule out any possible organic causes of trauma. If this is negative, I have told her there’s nothing further that I know to do and that she should follow-up with Dr. Johnston, her primary care doctor.”
At that time Dr. Fleming set up an MRI and I paid for the MRI.
Q. Were you contacted to authorize payment of that or did you just simply wait for a bill and pay it?
A. I’m certain that we were called and asked for authorization in advance of the testing/scan.
Roques further explained the reason for the physician to set up the test rather than himself as follows:
I don’t even know what facility that’s operated under. That’s why the doctor set their [sic] own tests. There are any number of radiologists and similar type facilities around and each one of the physicians uses a different one. I’m not going to go set up a test in a facility that the doctor that’s wanting to do the test doesn’t even go to.
[[Image here]]
It’s always been my experience when a doctor is ready to perform the test, he’ll call and ask for authorization to do so.
The trial judge denied the request for penalties and attorney’s fees. He stated:
The Court finds that the delays which occurred in the instant case were not caused by the defendant.
A determination of whether the insurer’s actions are arbitrary and capricious or without probable cause is a finding of fact not to be disturbed absent manifest error. Marcel v. Craig Guidry Const. Co., 511 So.2d 48 (La.App. 3rd Cir.1987).
Furthermore, “Penalties and attorney’s fees are not available when the defendants have a legitimate basis for denying [compensation benefits.” Id. at 51.
We conclude the record amply supports the trial judge’s conclusion the reason for the delay was not caused by defendant. The uncontradicted testimony is that the doctor recommending the MRI is the one who sets up the test at a facility which he chooses. It is the doctor who then requests the specific authorization.
Appellant cites our decision in Berkel v. Aetna Cas. & Sur. Co., 462 So.2d 1287 (La.App. 5th Cir.1985) as authority for an award in this case of penalties and attorney’s fees. Berkel is inapposite. In Berk-el the trial judge had found the insurance company to be “arbitrary and capricious in refusing to pay the dentist’s fees in advance.” Id. at 1290. The Berkel insurer would only pay after treatment had been undertaken. We held:
As applied to this case, we find the law placed on Aetna the responsibility either to provide a letter guaranteeing its financial responsibility for the necessary treat *118 ment or to refer plaintiff to a dentist who would treat without prepayment, [emphasis added].
The instant case is distinguishable since the insurer was paying for medical treatment and in fact did pay for the requested test when it had finally been set up by the physician.
Accordingly, for the reasons stated the judgment is affirmed.
AFFIRMED.